WALTER W. WALKER, administrator, *vs.* HENRY A. BULLARD.

Middlesex.    October 5, 1944. — November 30, 1944.

Present: FIELD, C.J., LUMMUS, QUA, RONAN, & SPALDING, JJ.

*Negligence*, Motor vehicle.

Evidence, that the operator of an automobile, returning to it in a spacious yard after an absence of about five minutes, previous to which he had seen a child about two years of age playing some distance away in a safe place at the edge of the yard, backed the automobile without looking for the child or knowing his whereabouts and ran over him, did not warrant a finding of negligence of the operator where the questions, whether, when the automobile was backed, the child was in sight or, if so, he was in a position that made backing of the automobile unsafe, were left matters of conjecture.

TORT. Writ in the First District Court of Southern Middlesex dated December 27, 1940.

On removal to the Superior Court, the case was tried before *O'Connell*, J., who, subject to an exception by the defendant, denied his motion that a verdict be ordered for him. There was a verdict for the plaintiff.

In this court the case was submitted on briefs.

*J. N. Clark*, for the defendant.

*J. P. Driscoll*, for the plaintiff.

QUA, J.· This is an action to recover for the death of the plaintiff's intestate as the result of being run over by an automobile driven by the defendant in a yard in the rear of the defendant's house on May 13, 1940.

The deceased, a boy twenty-six months of age, was the son of the plaintiff and the grandson of the defendant.

Because of a previous death in the plaintiff's family, the defendant's wife, grandmother of the deceased, had taken him to the defendant's farm in West Medway to care for him until after the funeral. In the rear of the defendant's house was a large open yard around which were grouped the house and a number of farm buildings. The plaintiff testified that the distance across the yard from the door of a shed attached to the house to a building called the barn was about one hundred feet. Photographs appear to confirm this statement.

The plaintiff testified that after the accident the defendant told him, in substance, that at about four-thirty o'clock in the afternoon the defendant drove into the yard and left his automobile in what we may call a corner of the yard, facing diagonally toward the house, with its front wheels on some flagstones near the shed door; that the defendant then saw the deceased on the grass "at the side of the yard" near the side door of the house; that the defendant went into the house with some groceries, remained "about five minutes," came out again, backed his automobile, and then drove it forward into the garage (shown on photographs as around the rear of the house in what may be described as another corner of the yard), came back from the garage, and saw the deceased lying on the ground in the yard at a spot which could be found to have been from twenty-five to thirty-five feet from the rear of the defendant's automobile as it stood before the defendant backed it. The plaintiff further testified as follows: "Q. Did he [the defendant] say whether or not he looked around to ascertain where your boy was before he started to back up? A. No. He said he didn't look around. He didn't see him. — Q. Well, did he say he didn't look or that he didn't see him? A. He said he didn't —. He didn't say anything about he didn't see him. He said he didn't know where he was when he came out of the house."

The defendant himself testified that he stopped his automobile as hereinbefore described; that when he first came into the yard he saw the deceased on the grass and waved to him and then went into the house; that when he came

out of the house he "didn't see anything around there," so he backed up about twenty feet and then drove the automobile into the garage; that he first knew there had been an accident when he came from the garage and saw the deceased on the ground "in the middle of the yard," probably twenty feet from the building; that when he came out of the house he did not see the deceased at all; that the deceased did not seem to be around the automobile; that he could not say he looked to see whether the deceased was in the same spot where he was before; that he knew he looked out there toward where the deceased had been and did not see anybody and got in his automobile and backed up; that he could not see anything as small as the boy in his mirror; that there was nothing to obstruct his vision; that when he was coming from the garage he found the deceased "pretty near half way between the side door [of the house] and the barn."

The case seems to have been tried by both parties and was argued here on the assumption that the defendant owed to the plaintiff's intestate the ordinary duty of due care. We deal with the case on the same basis.

We think that an element necessary to prove that the accident was caused by negligence of the defendant was lacking. Even if we assume that the equivocal testimony given by the plaintiff as to admissions by the defendant was sufficient to warrant a finding that the defendant did not look out in the yard before he backed his automobile, there is nothing to show that such failure to look had any causal connection with the accident, since there is nothing to warrant an inference that the deceased was in sight at that time, or if he was, that he was in a position that made it unsafe for the defendant to back away from the house as he did. How and when and from what direction the deceased came behind the automobile remain matters of conjecture. For aught that appears he may have dashed out across the yard in the rear of the automobile after the defendant began to back and from such a direction that the defendant could not see him. When last seen the deceased was in a place of safety at the edge of the yard

some distance from the defendant's automobile. It does not appear that he was then playing in the yard or doing anything that would suggest that he was likely to get behind the automobile near the middle of the yard. The whole of the spacious areas around the house were at his disposal. We do not think that the defendant was obliged to find him before the defendant backed his automobile. There is nothing to show that while actually backing the automobile the defendant failed to look to such an extent or to exercise such caution as the circumstances permitted.

We think the case distinguishable from such cases as *Dowd* v. *Tighe*, 209 Mass. 464, *Tenney* v. *Reed*, 262 Mass. 335, *Minsk* v. *Pitaro*, 284 Mass. 109, *Eaton* v. *S. S. Pierce Co.* 288 Mass. 323, *Capano* v. *Melchionno*, 297 Mass. 1, and *D'Ambrosia* v. *Brest*, 302 Mass. 316, where it could be found either that the operator could have seen the injured child or that he knew or ought to have known that children were about in the immediate vicinity of his vehicle where they were in danger of being struck. The case seems more nearly like *O'Reilly* v. *Sherman*, 298 Mass. 571, *Burke* v. *Durland*, 312 Mass. 291, and *Cioffi* v. *Lowell*, 316 Mass. 256.

*Exceptions sustained.*
*Judgment for defendant.*