MARTHA TROWELL, Administratrix of the estate of Allen Thomas Collins, deceased, *v.* DIAMOND SUPPLY COMPANY, a corporation of the State of Delaware, and RALPH NUTT.

(*September* 14, 1951.)

CAREY, J., sitting.

*Joseph Donald Craven* for plaintiff.

*William Prickett* for defendants.

Superior Court for New Castle County, No. 13, Civil Action, 1950.

CAREY, Judge:

 Some contradictions exist in the testimony offered by the plaintiff. For purposes of the present motion, the state of facts most favorable to plaintiff will be accepted as true.

The deceased child's mother and stepfather operate a restaurant and gasoline station on the west side of Highway 13. The property is improved with a single building facing east and about forty feet back from the road. The northerly part of the building is used as the family's living quarters and the southerly part is occupied by the restaurant. There is a porch about nine feet wide which extends entirely across the front of the building. The floor of this porch is not more than an inch or two above the level of the ground. Except for a doorway at each end, the porch is fully enclosed. A witness described it as a screen porch, but photographs show the enclosure to be composed of solid boards to a height of perhaps three feet with wire above it. On the date of the accident, there was actually no door in the northern doorway to the porch. Just outside of that doorway, there is a concrete apron or step perhaps a foot wide practically level with the ground. Immediately in front of the porch, that is, to the east thereof, are some gasoline pumps and other paraphernalia incidental to the sale of gas and oil. Between them

and the road lies vacant ground. There is other vacant ground on the north and south sides of the building. Judging by the photographs, all of this vacant land is used by cars driving in and out and parking.

Extending out from the north side of the building a few feet west of the porch is a small shed used for storing ice. One witness said this shed is from 15 to 20 feet from the porch but the photographs demonstrate that she must have meant 15 to 20 feet from the doorway which is at the extreme easterly side of the porch.

The defendant Nutt was the driver of the corporate defendant's ice truck, described as a large one. On the day of the accident, he came to the Trowell property to deliver ice. He parked the truck in a position parallel to the north side of the building and perhaps seven or eight feet from it. The rear of the truck was near the ice shed and the driver's cab apparently was nearly opposite the doorway. After putting some ice in the shed, Nutt went into the restaurant to get paid. He then came out and walked across the porch through the northerly doorway. The deceased, a boy three years nine months old, and his brother, about seven years of age, were playing on the porch near this doorway. In going out, Nutt placed his hand on the deceased's head. That act was observed by the witness Mayfield, who was sitting on a sofa in the center of the porch. It was also noticed by the witness Jackson, who was taking care of the children that afternoon and who was at the moment standing in the entrance to the living quarters, or only a few steps away from the children. It happened, however, that she turned and went into the building directly after Nutt left the porch.

Nutt walked around the front end of his truck, got into the cab and started to drive away "speedy", turning to the right as he did so. In the meantime, after Nutt had left the porch, the deceased child came out to a point about six feet from the doorway and near the truck on its right side somewhere back of its

front wheel. He stooped down looking under the truck presumably to watch Nutt's feet. When Nutt turned right as he started away, his right rear wheel struck and killed the child. There was nothing in the evidence to suggest that Nutt saw the deceased after walking past him at or near the porch entrance. It is clear that, from the driver's seat, he could not possibly have seen the child in its stooped position near the truck.

The foregoing statement is believed to be the explanation most favorable to plaintiff which is justified by the evidence. The details of the accident itself are based upon Mayfield's testimony alone. The only other witness called who actually saw it was the child's brother; on cross-examination, he said that the deceased ran off the porch against the back part of the truck *after* it had started to move forward.

A verdict was directed against the plaintiff because it was felt that no negligence had been proven on the part of the driver, or, in other words, that it had not been shown that Nutt had breached any duty he owed to the deceased. Plaintiff's counsel places some stress upon the fact that Nutt turned to the right and started off "speedy" as he drove away. Probably the child would not have been hit had he driven straight ahead. A driver, of course, is forbidden to turn from the direct line in which he is travelling without first exercising reasonable care to see that the turn can be made in safety. Here the truck was not travelling prior to the turn. Regardless of the direction in which Nutt started off, and regardless of whether his start was speedy or slow, his duty towards the deceased, if any existed, was to exercise reasonable care to see that such movement could be made in safety. The plaintiff's case must stand or fall upon a failure to keep a proper lookout, as it is called; under the circumstances of this case, the turn to the right or the speedy start constitute no separate, independent grounds of action; if either act is material, it becomes so only because of a prior failure to exercise due care to ascertain whether it could be performed safely.

The real inquiry in this case is whether Nutt had reason to apprehend that the child would come into the place of danger. The usual reasonable prudent man test is the standard for judging his conduct.

■ A small child cannot be expected to exercise the same care for its own safety which would be expected of an adult and, therefore, drivers who are aware of a child's proximity are held to a higher degree of watchfulness than would be necessary in the case of an adult similarly placed. Yet the driver is not an insurer and the burden of proving causal negligence on his part rests upon the other party. His duty in any given instance must depend upon the particular facts. These general principles are beyond question and are not hard to state. The difficulty arises in applying them to the circumstances of a specific case.

■ The last time Nutt saw the deceased, the child was only about seven or eight feet away from the truck. Plaintiff's counsel argues that because of this fact alone Nutt should have anticipated its moving into a place of danger and should not have moved his truck without first taking steps to make sure the child could not be hit. The weakness of this argument is that it overlooks other surrounding circumstances. The truck was upon a part of the premises which was obviously used for the movement and parking of cars of patrons of the restaurant. When Nutt left the porch the two children were in a safe place and, to all appearances, in care of an adult who was standing only a few steps away from them. It would be perfectly natural for Nutt to assume that the maid would call or run out if the child left the porch and approached his truck. After Nutt got into the cab, for all he knew, the child may have been back of the wooden part of the porch enclosure or it may have gone into the house with the maid. In my opinion, a verdict for the plaintiff could only have been the result of sympathy or prejudice on the part of the jury for there was nothing to show that Nutt knew, or should have known, that the child was in danger.

■ As might be expected, no case has been found with facts just like these. Of those cited, probably the one most nearly resembling the present case is *Cioffi v. Lowell*, 316 *Mass.* 256, 55 *N. E.* 2d 411, in which the Court held that no actionable negligence had been established and directed that judgment be entered for the defendant. Others adopting the same view under circumstances somewhat similar are: *Borland v. Lenz*, 196 *Iowa* 1148, 194 *N. W.* 215, 216; *Ondrusek v. Zahn*, 356 *Pa.* 537, 52 *A.* 2d 461; *White v. Edwards Chevrolet Co.*, 186 *Va.* 669, 43 S. E. 2d 870; *Burke v. Durland*, 312 *Mass.* 291, 44 *N. E.* 2d 655; *Pritchard v. Henry* (*Tex. Civ. App.*) 200 *S. W.* 2d 651; *Walker v. Bullard*, 317 *Mass.* 288, 57 *N. E.* 2d 917. The only Delaware case which has been cited is *Linthicum v. Truitt*, 2 *Boyce* 338, 80 *A.* 245, 249, where the facts were dissimilar but the Court did utter this statement in its charge: "While a particular act committed by an infant of a discerning age might clearly constitute contributory negligence, yet, if the same act should be committed by an infant of less discernment, it might not constitute contributory negligence. Nevertheless, if such infant places himself in a position of peril, although he may be unable to comprehend and appreciate the danger to which he is exposed, and should sustain injuries in consequence thereof, the person injuring him under such circumstances would not be liable therefor, if, by the exercise of due and reasonable care, he could not have observed the perilous position of the infant and prevented injury to him".

Plaintiff's counsel has cited a great many authorities which have been carefully reviewed. They all present factual situations which warranted submission of the issue of negligence to a jury. It is felt, however, that those cases herein relied upon are far more pertinent to a determination of the instant one.

Plaintiff's motion for a new trial will be denied.