VICENTE ÁLVAREZ ET AL., Plaintiffs and Appellants, *v.* MANUELA HERNÁNDEZ AND THE PORTO RICAN AND AMERICAN INSURANCE COMPANY, Defendants and Appellees.

No. 10742. Argued January 7, 1953.—Decided March 26, 1953.

*Juan Nevares Santiago* for appellants. *Córdova & González* and *Alberto Picó*, for appellees.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

José Manuel Álvarez Santana, a boy nine years old, was run over by an automobile belonging to codefendant Manuela Hernández, on January 1, 1950, at Fernández García Street of Luquillo, around four o'clock in the afternoon. On that same day the boy died. His brothers and sisters, as sole heirs, filed an action for damages against Manuela Hernández and her insurer, Porto Rican Insurance Co., in the former District Court of Puerto Rico, Humacao Section. After a hearing on the merits, the Humacao Court rendered judgment dismissing the complaint after setting forth, in part, the following findings of fact:

"That at the time of the accident the Hudson vehicle P–26029 driven by Carlos Rivera Correa, was going from Fernández García Street of the town of Luquillo towards Fajardo at an approximate speed of twenty to twenty-five miles and the minor José Antonio Álvarez Santana was on the right-hand sidewalk, in the direction from Luquillo to Fajardo, very near to the Insular Police Headquarters of Luquillo.

"That the minor José Antonio Álvarez Santana, whom María Teresa Ramos had sent to the drug store to look for some medicines, was playing with a group of children who were pushing one another and that as he attempted to cross the street and was two feet away from the sidewalk, he was hit by the right

fender of the Hudson vehicle license No. P–26029, and the instance that the driver Carlos Rivera noticed that the child tried to cross the street he swerved the vehicle to the left, the car remaining crosswise on the street.

"That before the accident, there was a distance of approximately fifteen feet between the car and the minor José Antonio Álvarez Santana and when he started running from the sidewalk onto the street he did not look in any direction, and the accident having occurred, the minor fell on the street with his head lying on the sidewalk and the car three feet away from the place where the minor fell after receiving the blow."

Plaintiffs have appealed to this Court assigning the following errors:

"1. The lower court erred in dismissing the complaint on the theory that the minor's negligence was the proximate cause of the accident.

"2. The lower court erred in holding that the accident was not due to negligence on the part of defendant's driver.

"3. The lower court erred in weighing the evidence and in unduly applying the law and jurisprudence to the proved facts of the case."

■ As it is stated in Blashfield, *Cyclopedia of Automobile Law*, Vol. 2 A, p. 382, § 1491, Permanent Edition, "of all the cases of destruction of lives and homes that have followed in the wake of the motor vehicle, that of the mangling of children beneath its wheels carries the most poignant sense of tragedy. This is partly due to the contrast between their innocence and helplessness on the one hand and the ponderousness of the machine that crushes them into the earth on the other. The safeguarding of the child has always appealed to the protective instincts of men, whether civilized or savage, and the humanitarian driver of an automobile, when the time and place is such that the presence of children in the neighborhood, and therefore their excursions into the streets, may reasonably be expected, will have his machine under such control that it can be stopped almost instantly."

On the other hand, it is our duty to maintain an attitude of judicial objectiveness. Our humanitarian feelings of sympathy towards children must not induce us to establish, absolutely, the liability of vehicle conductors independently of the specific circumstances of the case and by the fact in itself that a child was the victim of the accident. Vehicle drivers are not absolute guarantors of the children's safety. (*Trowell* v. *Diamond Supply Co.*, 83 A. 2d 691; *Hanson* v. *Binder*, 50 N. W. 2d 676.) But it is their duty to observe a higher degree of vigilance when children are facing perilous situations. The judicial objectiveness admits a thorough understanding of life's realities, and one of those realities refers to the risk involved in the external manifestations of children's impulses and instincts.

 In the case at bar, according to the findings of fact of the court *a quo* the driver of the vehicle was driving along his right of way, at a lawful speed of twenty to twenty-five miles per hour. The child was on the sidewalk, generally considered a place of safety, and he unexpectedly ran onto the street when the vehicle was at a distance of fifteen feet from the child. The lower court held that the driver faced a sudden emergency, which resulted in an unavoidable and unfortunate accident. The general rule is to the effect that when a person occupies a place of safety, and unexpectedly abandons the same suddenly rushing in front of the vehicle, the driver is not responsible for the consequences of the accident. *Hernández* v. *Acosta*, 64 P.R.R. 166, 177; *Meléndez* v. *Álvarez*, 35 P.R.R. 316; *Portalatín* v. *Noriega*, 33 P.R.R. 755; *Aguayo* v. *Municipality of San Juan*, 35 P.R.R. 390; *López* v. *Irizarry*, 48 P.R.R. 355; *Hernández* v. *P. R. Ry Lt. & P. Co.*, 42 P.R.R. 428; *De García* v. *Figueroa & Gautier*, 52 P.R.R. 865; *Martínez* v. *Leavitt*, 42 P.R.R. 795; *Colón* v. *P. R. Ry. Lt. & Power Co.*, 40 P.R.R. 333; *Franco* v. *Serra*, 58 P.R.R. 216; *Figueroa* v. *Vives & Maxán*, 46 P.R.R. 233; *De la Paz* v. *White Star Bus Line*, 63 P.R.R. 659; *Matos* v. *Pabón*, 63 P.R.R. 855; Blashfield *op. cit.;* p. 406,

§ 1498. See also the Annotations in 65 A.L.R. 192, 197 and 113 A.L.R. 528, 536, on liability for damages of children who suddenly rush onto the street. That general rule has been followed in some cases, as to children standing upon a sidewalk. *Wilson* v. *Butler Motor Transit Co.*, 84 A. 2d 207; *Schnerfeld* v. *Hendry*, 1952, 245 P. 2d 420.

Notwithstanding the foregoing, the specific circumstances of this case do not authorize the application of the doctrine of unavoidable accidents. The Humacao Court set forth a conclusion to the effect that the child who was the victim of the accident was playing with other children on the sidewalk, pushing each other, immediately before rushing onto the street. Although this was not an object of conclusions by the lower court, it was shown to the court *a quo*, by uncontroverted evidence not subject to conflicts of any kind, that besides, the children, were running and "making noise" on the sidewalk; that the accident took place in a straight stretch of street, and that the driver had a clear view ahead, at the time of the accident; that said street was wide with space enough for three vehicles, that at the time of the accident there were no other vehicles near the place where the collision occurred and that the driver did not sound his claxon nor gave any signal whatsoever. Besides, the court *a quo* concluded specifically that the vehicle in question was driven two feet from the sidewalk at the time of the accident.

The conduct and the movements of the children on the sidewalk entailed a potentially dangerous situation. They were not standing fixedly on the sidewalk nor under the custody or protection of an adult. They were playing, running and pushing each other. This implied that the driver could reasonably anticipate that one of the children might rush onto the street as a result of their childish games. There was the reasonable probability that one of the children might leave the sidewalk and rush onto the street. The children's conduct made that risk possible and the driver was bound, reasonably, to anticipate that said inherently danger-

ous situation might materialize by way of some sudden movement of a child onto the street. Negligence depends on risks and is the result of the failure to exercise the duty of acting carefully when facing a dangerous situation. If a specific dangerous conduct may be anticipated, this gives rise to the duty of acting carefully. The unavoidable accident doctrine requires in its application to cases as the one at bar, that the victim's conduct be unexpected. If said conduct could be reasonably anticipated and the driver of the vehicle has had the opportunity to control and drive the automobile in such a manner that the accident might have been avoided, this results in liability.

██ The operative rules as to the care which the driver of a vehicle must exercise in connection with adult transients or pedestrians are not strictly applicable as to immature children inasmuch as, in connection with the latter, a higher degree of care should be required, due to the greater danger involved, in view of the fact that children have a lesser capacity for reflection since they act according to their instincts and childish impulses. Therefore, the driver of a vehicle must observe a higher degree of vigilance and control as to approaching children. *Yokeley* v. *Kearns*, 25 S. E. 2d 602; Blashfield, *op. cit.* Vol. 2 A, p. 383 *et seq.* This is especially true when the vehicle is approaching a school or a group of children who are playing or running. *Figueroa* v. *Picó*, 69 P.R.R. 372; *King* v. *Griner*, 1952, 60 So. 2d 177; *Cotant* v. *U. S.*, 1952, 103 F. Supp. 770; *McMinn* v. *Lilly*, 1952, 60 So. 2d 603; *Cimo* v. *Karstendiek*, 173 So. 548; *Brown* v. *Wade*, 145 So. 790.

 In the case at bar, the driver of the vehicle could have avoided the accident. Without considering any isolated factor as being operative, all the specific circumstances of this case, considered together, imply responsibility of defendant. It is true that the chauffeur was driving the automobile at a speed authorized by law, but that fact, alone, does not exempt from liability. The driver was bound to reasonably

anticipate that the child could rush onto the street, and he ought to have slackened his speed still more in order to have a more effective control of the vehicle so as to avoid an accident. Even in the case of an emergency, it was one that could be anticipated. Before the specific moment of the accident the chauffeur ought to have swerved the vehicle more towards the center of the street in order that it would not be so near to the sidewalk upon approaching the place where the children were playing. The street was wide and at the time there were no other vehicles at the place, therefore, there was nothing which could prevent him from being cautious. The accident would not have happened if he would have acted in the manner which we have set forth.

■ The fact itself that a child is standing fixedly on a sidewalk does not imply, generally, that the driver of an automobile has to stop or take any extraordinary precautions, but that was not the situation in the case at bar. Each case must be decided according to its own particular circumstances. Under the attendant circumstances defendant must be held liable.

■ There are two intertwined problems herein, one of negligence and the other of causation. Under any acceptable definition of the concept of negligence, defendants must be held liable in this case. If negligence is considered as an element of risks which may be anticipated, that is, if it is the failure to exercise care when facing a dangerous situation, undoubtedly the driver of the vehicle belonging to codefendant Manuela Hernández faced a dangerous situation in view of the fact that the children were running, pushing each other and hand playing on the sidewalk. Witness for defendant Héctor Soto Tapia testified that the children were coming along the sidewalk "making noise . . . they were coming to and fro and hand playing." Furthermore, this witness testified that the decedent was running along the edge of the sidewalk. A "reasonable man" who would have been in the same position as the driver ought to have anticipated

that, as a natural result and prolongation of the games and movements of the children, one of them could have rushed onto the street. As we have stated, it was not the case of adults on a sidewalk, or even of a child standing fixedly on the sidewalk. It was the case of children moving and pushing each other and the victim of the accident himself was running along the edge of the sidewalk. Evidently, the situation was potentially dangerous and evidently the driver ought to have anticipated the probability that one of the children might rush onto the street. All the factors or elements of negligence were present and the reality which the conductor faced imposed on him an obvious duty of acting carefully in order to avoid hurting one of the children. As stated in 37 Yale L. J. 618, 619, footnote 3: "It is obvious that an actor is required to be more careful when his conduct is likely to endanger children than when it is likely to endanger only adults. In general, unless a defendant has reason to know otherwise, he is entitled to assume that persons . . . will react as they are commonly supposed to react under the circumstances. Children do generally exercise a lesser caution for their own safety than do adults. Since this is common knowledge, a defendant is not only entitled to assume it, but he is charged with the knowledge of it, and must act with a view to it. In determining a defendant's negligence toward a child, it may, therefore, become important to ascertain whether or not the defendant should have foreseen a particular kind of conduct on the part of the child."

If the negligence or causation is based on the probability of preventing the damage, that is, on the theory that should the defendant have acted otherwise the accident would have been avoided, it also implies responsibility on the part of defendant herein. We have already seen that the accident could have been avoided if the driver would have slowed down or if he would have driven the vehicle farther away from the sidewalk, which he could have done in this case in view of the fact that there were no other vehicles

in the street at the time. Apparently the court *a quo* gave importance to two factors, to wit: (1) that the vehicle was being driven at a speed authorized by law and (2) that when the child rushed onto the street there was only an approximate distance of 15 feet between the car and the child and that therefore, no matter how much effort the driver would have made to stop the vehicle, and swerve it to the left he could not have avoided the accident. As to the first factor pointed out, we can apply the general rule to the effect that the fact that a car is driven at a speed authorized by law does not exonerate, *per se*, the conductor from liability if, in view of the circumstances of the case, he could have driven the car at a lower speed than the one authorized by law. When there are children on a sidewalk it is the driver's duty to drive his vehicle at such a speed that may allow him to control the car in case of an emergency. Blashfield, *op. cit.*, Vol. 2 A, p. 395, 396; *Doyle* v. *Nelson*, 11 So. 2d 645. Negligence need not be exclusively defined by a certain specific speed, but must be determined according to the speed required in view of the specific circumstances of the situation. As to the allegation to the effect that there was a distance of only 15 feet between the car and the child when the latter rushed onto the street, which made it impossible to avoid the accident, that argument begs the question involved, that is, if we assume that it was not the driver's duty to reduce the speed then the distance was the operative factor in the case at bar. However, if the driver would have slowed down, then, when the child rushed onto the street, the distance between the child and the vehicle would have been greater and the driver could have avoided the accident.

We still have to consider the allegation that the child José Manuel Álvarez Santana was guilty of contributory negligence. Independently of any discussion in connection with the establishment of uncontrovertible or rebuttable presumptions as to the lack of negligence in a child accord-

ing to his age (174 A.L.R. 1080, 1103, 1110, 1149; 37 Yale L. J. 618: *The Standard of Care Required of Children*) the prevailing rule, which has been accepted by this Court, is to the effect that children of tender age are not required to conform to the standard of behavior which is reasonable to expect of adults and their conduct is to be judged by the standards of behavior to be expected from a child of equal age, intelligence and experience under similar circumstances to the ones appearing in the case. *Cruz* v. *Rivera*, 73 P.R.R. 632, 642; *Figueroa* v. *Picó*, 69 P.R.R. 372; *Hernández* v. *Acosta*, 64 P.R.R. 166; 174 A.L.R. 1084. It has been stated that the standards of conduct to which a child is to be held when his own liability is in question may be different from that to which he is to be held when he seeks to recover from a negligent defendant inasmuch as there is a strong public policy in favor of protecting children from losses attributable to their own lack of maturity. Incidentally in *Michalsky* v. *Gaertner*, 5 N. E. 2d 181, it is held that as a matter of law, a child 9 years old who rushed to cross a street without looking in any direction was not negligent. See also 36 Mich. L. Rev. 328; 95 Pa. L. Rev. 93, 96.

In the light of the legal rules previously stated, we shall consider the evidence introduced therein as to the conduct of the child in question. Jesús Bird Gómez, witness for the plaintiff stated the following:

The boy rushed from the sidewalk to the street and when he was about two feet from the sidewalk, "then he saw the car coming and tried to run back to the sidewalk in front of the drug store where he was standing"; the car hit the boy with the right front fender, and hit him in the mouth, in the front, carrying him for a distance of about 8 to 10 feet from the car; the child's head rested on the sidewalk; the child rushed from the sidewalk to the street and "had advanced about two feet towards the street"; tried to return to the sidewalk and it was then that the car hit him with the right fender; the child "tried to protect himself running

back to the sidewalk," the witness does not know if the child rushed to the street with the intention of crossing it but he does know that he rushed to the street; he was about two feet from the sidewalk.

Héctor Soto Tapia, witness for the defendants, testified as follows:

"There was a small group of children hand playing and one of them tried to cross the street, but when he attempted to cross, the car passed, it seems that the boy heard the motor of the car, tried to turn back and as he moved the car was coming and at this point the car 'struck' him; they were all hand playing on the sidewalk; the child tried to cross the street, he was running; he fell on the sidewalk with his head on the sidewalk; when he rushed out to the street he continued running without looking at any direction; the children were pushing each other and it was then that the child rushed to cross the street; when they were pushing each other, 'they were coming to and fro, running, making noise and hand playing': the child was on the sidewalk, on the very edge."

That was, essentially, the evidence as to the child's conduct. It is evident that he was not responsible of contributory negligence. The evidence shows that the action of the child in rushing out to the street was an integral part of the motions of the child within the sidewalk, and was connected with the play he had with the other children. There was unity of movements in time and space. The child's motion of rushing out to the street was a natural action which does not imply negligence on his part. There is no evidence in the record that when the child rushed onto the street he saw, or could have seen the vehicle which was coming along, especially in view of the fact that there was no evidence to the effect that the driver of the vehicle sounded the claxon at all, and besides, the movement of the child in the street extended to a distance of two feet and that did not really imply a negligent conduct on his part. Even with such a limited movement he tried to turn back to the sidewalk when he realized the danger he was facing and actually moved

towards the sidewalk, so much so that when the collision occurred, his head rested on the sidewalk. We must also observe that the blow was caused by the right front fender of the vehicle, and he received the blow in the face, in the child's mouth. From an objective and realistic point of view the child's conduct was not negligent.

The judgment appealed from will be reversed and the case remanded to the court *a quo* to fix the damages suffered by plaintiff and render judgment in accordance with this opinion.

Mr. Chief Justice Snyder dissented.

---

MR. JUSTICE NEGRÓN FERNÁNDEZ with whom MR. JUSTICE SIFRE concurs, concurring.

Because it is a wise, sensible and fair opinion—and because it is correct in the application of the law to the facts herein—I concur with the majority of the Court, and wish to add the following: if the view set forth in the dissenting opinion should prevail, the drivers of motor vehicles in Puerto Rico would be licensed to kill children in our highways as long as they drove their vehicles "at a speed authorized by law." The only precaution that they would have to exercise in said cases would be merely not to violate the specific provisions of the law which constitute the offense.

To classify our decision as a "highly unfortunate precedent" as is done in the dissenting opinion, in order to palliate its own unreason, is not justified under the attendant circumstances of this case, as is shown by the careful analysis of the facts—as well as of the legal doctrine on the subject—made in the opinion of the Court.

---

MR. JUSTICE MARRERO with whom MR. JUSTICE PÉREZ PIMENTEL concurs, dissenting.

I agree with the opinion of the majority as to that although "vehicle drivers are not absolute guarantors of the children's safety . . . it is their duty to observe a higher degree of vigilance when children are facing perilous situa-

tions." Likewise, I agree with said opinion in that "the general rule is to the effect that when a person occupies a place of safety, and unexpectedly abandons the same suddenly rushing in front of the vehicle, the driver is not responsible for the consequences of the accident," and in that, with certain limitations "that general rule has been followed in some cases, as to children standing upon a sidewalk." I also agree in that "the operative rules as to the care which the driver of a vehicle must exercise in connection with adult transients or pedestrians are not strictly applicable as to immature children inasmuch as, in connection with the latter, a higher degree of care should be required, due to the greater danger involved, in view of the fact that children have a lesser capacity for reflection since they act according to their instincts and childish impulses." With all that, I repeat, I agree. However, I do not agree in that under the circumstances of this case a judgment for plaintiffs should be rendered.

If as the court *a quo* concluded, the minor darted into the street suddenly and unexpectedly when plaintiffs' vehicle was only 15 feet apart, it is not possible to conceive that the accident could have been avoided. In expressing myself as I do, I am conscious that, although the trial court made no findings of fact to that effect, from the evidence before it, it is obvious that the decedent and other children were running and hollering in the sidewalk; that the street at the place where the accident happened is straight; that the view at the moment of the accident was unobstructed and that said street was wide enough for three vehicles at the same time.

If, as said court concluded, the automobile which caused the damage was traveling at a speed of 20 to 25 miles per hour, a simple arithmetical operation will show that, accepting as correct the first of the two speeds mentioned, in a single second—we all know how short this period of time is— the vehicle moved 29 feet. If we accept as correct the second

speed, said vehicle moved 36.36 feet in a second. In traveling in one or the other speed the driver was within the law. Section 15(b) of Act No. 279 of April 5, 1946 (Sess. Laws, pp. 598, 636) as amended by Act No. 156 of April 26, 1951, (Sess. Laws, pp. 368, 370). Furthermore, if we accept as correct the chart which appears in Blashfield's *Cyclopedia of Automobile Law and Practice*, Permanent Edition, Vol. 9, Part 2, at page 706, the average driver of motor vehicles takes ¾ of a second to react to danger. See to that effect, *State* v. *Belle Isle Cab Co.*, 71 A. 2d 435; *Kaan* v. *Kuhn*, 187 P. 2d 138. Accepting that the driver herein reacted within the specified period, counting the same from the moment in which the minor suddenly rushed onto the street, the accident would have been unavoidable, inasmuch as the vehicle anyway would have traveled more than 15 feet before the driver started reacting. Undoubtedly, the conductor faced a sudden emergency and took all the precautions which it was possible to take. He immediately applied the brakes, swerved to the left; and stopped three feet apart from the victim [1] with the car across the street.

There is no evidence in the record that the driver saw the children playing and making noise in the sidewalk. Niether is there evidence to show that his view was obstructed. On the other hand, I do not accept the conclusion that "the driver did not sound his klaxon or give any signal whatsoever." There is absolutely no evidence in the record to this effect. The only reference appearing on that particular in the transcript of evidence is the one made by witness Jesús Bird Gómez when he was asked by plaintiffs' counsel if he remembered whether klaxon had been sounded, to which he answered, "I did not hear." When the court asked him on that particular, the witness repeated, "I did not hear." From

---

[1] This is another fact which shows how slow he was going. *Efret* v. *Quiñones*, 40 P.R.R. 183, 186; Blashfield's work and volume cited, § § 6233 and 6237, pp. 694 and 705; *Koustaky* v. *Grabowski*, 34 N. W. 2d 893; *Wilkins* v. *Stuecken*, 225 S. W. 2d 131.

those mere words the opinion of the majority concludes that the automobile involved in the accident gave no warning of its approach. Said conclusion, I repeat, is not supported by the evidence. The fact that the witness did not hear the sound of a horn does not mean that it was not blown. It could have been blown and the witness not hear it, especially if, as the record shows, he was at the time speaking to Felipe García. Notwithstanding this, even admitting for the purposes of the argument that no notice was taken of the vehicle's approach, "a driver of an automobile is not bound to blow his horn continuously in driving through the streets of a populous city unless danger to another is apparent." *People* v. *Castillo*, 45 P.R.R. 845; *Aguayo* v. *Municipality of San Juan*, 35 P.R.R. 390.[2]

Could the driver of a car take greater precautions than the ones observed herein? He was driving the car at a lawful speed, on the road which leads from San Juan to Fajardo and that upon going through Luquillo becomes one of its streets, he was as much on his right as possible, (§ 17 (*d*) of Act 279, *supra*, as amended by Act 492 of May 15, 1952, Sess. Laws, p. 1060) and he was looking in the direction in which he was going. This was evidently proved by the promptness with which he acted when the minor suddenly rushed onto the street when the vehicle was 15 feet apart. Greater precautions, in my opinion, can not be possibly taken.[3]

---

[2] *Cf. People* v. *Ramos*, 43 P.R.R. 68, where it is stated at page 73 that "as to the failure to sound a klaxon or horn, the law only requires the giving of such warning on passing pedestrians or other vehicles and while rounding a curve, . . .". See, also, § 17 (*e*) of Act 279, *supra*, as it was amended by No. 492 of 1952, p. 1060.

[3] It is convenient to state that the place where the accident occurred is not one next to a school zone nor one in which children of tender age normally play. See *Figueroa* v. *Picó*, 69 P.R.R. 372, 375. Contrariwise, it is a street which forms part of an insular highway where the traffic is heavy. Besides, the place of the accident is not next to a crossway nor next to a curve, but rather far from both.

I do not believe that because of the mere fact that a driver of a motor vehicle sees children playing and running in one of the sidewalks of the street along which he is driving, he has the duty to stop his march. It is enough, in my opinion, that he be on the lookout and driving at a moderate speed. These requirements were fully complied with.

I have examined each and everyone of the authorities cited in the majority opinion. Although they uphold the legal rules set forth in the opinion, none of them, however, upholds the final conclusion reached.

Of the million and odd people whose lives have been destroyed since the introduction of that dangerous mechanical device known as the motor vehicle, so useful, necessary and indispensable to the progress of the nations, thousands have been children. Notwithstanding this, as stated in the opinion of the majority, "our humanitarian feelings of sympathy towards children must not induce us to establish, absolutely, the liability of vehicle conductors independently of the specific circumstances of the case and by the fact in itself that a child was the victim of the accident." By this, I do not want to even remotely suggest that the conclusion reached by the majority of the court has been due to the sympathy that the writer of the opinion and the distinguished justices who concurred with him feel towards the children, without taking into consideration the specific attendant circumstances. But I do say that in construing the doctrine generally applied to situations as the one involved herein, they have gone too far thereby establishing a highly unfortunate precedent. In order that in cases of this nature the driver of a vehicle be held liable it is necessary that said driver incur in fault or negligence. In the absence of such fault or negligence he should be exonerated from all liability. Section 1802 of the Civil Code, 1930 ed. *García* v. *San Juan Light & Transit Co.*, 17 P.R.R. 595, 597; *Godreau* v. *The American Railroad Co.*, 17 P.R.R. 760; *Maldonado* v. *Hamil-*

*ton,* 32 P.R.R. 208, 301; *Aldiba* v. *Porto Rico Ry. L. & P. Co.,* 41 P.R.R. 75; *Heirs of Ortiz* v. *Ramírez,* 68 P.R.R. 462. As stated in *Frank* v. *Cohen,* 135 Atl. 624, 625, "defendant's negligence must be established either by direct evidence or such circumstances as fairly lead to the conclusion that a specific act of negligence existed and it was the proximate cause of the injury." I really do not see where the fault or negligence committed by the driver herein lies. Consequently, the judgment appealed from should have been affirmed.

Let us examine roughly some of the cases decided in the United States which involve a question similar to the one herein. In *Lucas* v. *Bushko,* 171 Atl. 460, it is stated that "where an automobile driver sees a child in a place of danger, or has reason to apprehend that it might run into a place of danger, and has sufficient time to stop his car if under proper control, it is his duty to exercise such care as would be reasonably necessary to avoid a collision. . . . . *If the child suddenly darted in front of the moving vehicle, defendant would, of course, not be liable; . . ."* (Italics ours.) A similar doctrine is stated in *Purdy* v. *Hazeltine,* 184 Atl. 660, 661; *Bowman* v. *Stouman,* 141 Atl. 41, 43; *Burlie* v. *Stephens,* 193 Pac. 684, 686; *Gettemy* v. *Grennan Bakeries,* 21 A. 2d 465, 467; *Frank* v. *Cohen, supra,* and *Carter* v. *Garraway,* 138 So. 143, 145. We entirely agree with that rule. It is the one which should have been applied herein.

The judgment appealed from should have been affirmed.

