KENNETH J. PULLEN, THROUGH AND BY JAMES K. VOBORIL, HIS NEXT FRIEND, APPELLANT, V. ADRIAN NOVAK ET AL., APPELLEES.

99 N. W. 2d 16

Filed November 6, 1959. No. 34572.

*Bryant & Sullivan,* for appellant.

*Sidner, Lee, Gunderson & Svoboda, Crossman, Barton & Quinlan,* and *Spear, Lamme & Simmons,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the district court for Dodge County. It involves an action brought by Kenneth J. Pullen, a minor, by and through James K. Voboril, his next friend, against Adrian Novak, Erwin Boysen, and Robert L. Pullen for the purpose of recovering damages which he allegedly suffered as a result of being struck by an automobile owned by the defendant Robert L. Pullen but operated by the defendant Adrian Novak. The basis for plaintiff's claim is negligence on the part of the defendants Robert L. Pullen and Adrian Novak in relation to Novak's operation of Pullen's car, which negligence he alleged caused the accident which resulted in his injuries.

The defendant Robert L. Pullen is plaintiff's father, the defendant Erwin Boysen was the father's employer at the time of the accident, and the defendant Adrian Novak was at that time a friend of the Pullen family.

The accident, as a result of which the plaintiff was injured, happened around 7 p.m. on June 9, 1957, on the private driveway of the then Pullen home located at 1217 North Nye Street in Fremont, Nebraska. It oc-

curred while defendant Adrian Novak was backing the Pullen car, an Oldsmobile, which was parked on the Pullen driveway. The car, while being backed, in some manner struck plaintiff and seriously injured him.

Plaintiff's amended petition alleged that Robert L. Pullen, his father, was guilty of negligence in certain respects, setting out four specifications to that effect. Pullen demurred thereto, setting out as one of the grounds therefor that: "* * * the petition does not state facts sufficient to constitute a cause of action against the defendant, Robert L. Pullen. Said Kenneth J. Pullen being an unemancipated minor child as shown in the petition, has no right of action against the parent for the negligent tort of such parent."

On July 22, 1958, the trial court sustained Pullen's demurrer and gave plaintiff 10 days to amend his pleadings, stating that upon failure to do so plaintiff's action would be dismissed as to Pullen. Plaintiff failed to amend his pleadings and consequently, on August 20, 1958, the plaintiff's action was dismissed as to Robert L. Pullen. Thereafter, as to this order, no further action was taken by the plaintiff in the form of a motion for new trial or notice of appeal within the time provided by statute for doing so.

Defendant Erwin Boysen filed a motion for summary judgment on September 17, 1958. This motion the trial court sustained on October 16, 1958, and thereupon dismissed the action as to defendant Boysen.

The action went to trial as to defendant Adrian Novak on October 20, 1958. At the end of plaintiff's evidence the trial court sustained Novak's motion to dismiss.

Plaintiff thereafter, on October 24, 1958, filed a motion for new trial directed at both the trial court's order sustaining defendant Erwin Boysen's motion for summary judgment and dismissing his action against said defendant and also at the trial court's order sustaining defendant Adrian Novak's motion to dismiss, claiming the trial court erred in entering both of these orders.

The trial court overruled this motion for new trial and plaintiff, on December 3, 1958, perfected this appeal from that order.

This court, on February 13, 1959, on motion of appellee Robert L. Pullen, dismissed the appeal as to him. The reason for doing so is apparent from the history of this case hereinbefore set forth as it relates to appellee Pullen.

We shall hereinafter refer to Robert L. Pullen as Pullen and to his car as the Olds; we shall refer to appellee Adrian Novak as Novak and to his car as the Chevrolet; we shall refer to appellee Erwin Boysen as Boysen and to his customer's car as the Lincoln.

The principal contention made by appellant is that the evidence he adduced was sufficient to present a jury question as to Novak and that the trial court erred in sustaining Novak's motion to dismiss. As stated in Christ v. Nelson, 167 Neb. 799, 95 N. W. 2d 128: "In an appeal from an order directing a verdict and dismissing an action, the party against whom the verdict was directed is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence." See, also, Segebart v. Gregory, 156 Neb. 261, 55 N. W. 2d 678; Comstock v. Evans, 159 Neb. 739, 68 N. W. 2d 351.

That appellant can maintain the action is beyond question. As stated in Clasen v. Pruhs, 69 Neb. 278, 95 N. W. 640: "It seems to be well established that infants have a right to sue by guardian or next friend, to recover damages done to their person or property by the tortious acts of another." However, in this respect, Article I, section 13, of the Constitution of the State of Nebraska does not create any new rights. See Muller v. Nebraska Methodist Hospital, 160 Neb. 279, 70 N. W. 2d 86. As therein stated: "Article I, section 13, of the Constitution of the State of Nebraska does not create any new rights but is merely a declaration of a

general fundamental principle. It is a primary duty of the courts to safeguard this declaration of right and remedy but, where no right of action is given or remedy exists under either the common law or some statute, this constitutional provision creates none."

"In an action for damages for negligence the burden is on the plaintiff to show by direct or circumstantial evidence that there was a negligent act or omission by the defendant and that it was the proximate cause of plaintiff's injury or a cause which proximately contributed to it." Weston v. Gold & Co., 167 Neb. 692, 94 N. W. 2d 380.

" 'In every case, before the evidence is submitted to the jury, there is a preliminary question for the court to decide, when properly raised, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed.' Krichau v. Chicago, B. & Q. R. R. Co., 150 Neb. 498, 34 N. W. 2d 899." Stolting v. Everett, 155 Neb. 292, 51 N. W. 2d 603.

"Where the evidence bearing upon the vital issue presented by the pleadings in a case is of such a nature that reasonable minds can not disagree as to its effect, it is proper for the court to require the jury to return a directed verdict." Nelson v. Nelson, 95 Neb. 523, 145 N. W. 1004.

The record discloses the following: On June 9, 1957, Pullen lived with his family at 1217 North Nye Street in Fremont, Nebraska. His family at that time included appellant, a son then 21 months of age who had just learned to walk fairly well. Pullen at that time worked for Boysen at the latter's service station located at Twenty-third and Nye Avenue in Fremont, Nebraska.

On June 9, 1957, a customer left his Lincoln at the Boysen service station to be serviced with an understanding with Pullen, who was then in charge of the station, that it would be taken to the customer's home

when the servicing had been accomplished. About 7 p.m., on the evening of June 9, 1957, Mrs. Robert L. Pullen, having the appellant with her, was at the service station in the Olds waiting to take Pullen home, that apparently being the end of his working day. Agreeable to Boysen, Pullen was to take the Lincoln and drive it to the customer's home with the understanding that Pullen's wife would follow in the Olds so Pullen would have a ride to his home as he did not intend to return to the service station that evening. Pullen proceeded down Nye Avenue in the Lincoln but, as he did so, the engine of the Lincoln started to overheat. Pullen thereupon drove the Lincoln off of Nye Avenue onto Linden Street and then onto the private driveway leading to his home in order to get some water to put in the Lincoln to cool the overheated engine. It appears that the Pullen home was just off the direct route from the service station along Nye Avenue to the customer's home.

Pullen's home had a private driveway off of Linden Street. The driveway ran along the south side of the house. When Pullen drove onto his driveway he observed a Chevrolet parked on the driveway just south of the house at the southwest corner thereof. Pullen drove the Lincoln to within about 15 feet of the back end of the Chevrolet and, at that point, parked it on the private driveway. Mrs. Pullen, who had followed Pullen onto the private driveway, parked the Olds on the driveway close to and just behind the Lincoln. The three cars were all parked in a line on the driveway. The Chevrolet parked on the driveway belonged to Novak. Mr. and Mrs. Adrian Novak were friends of the Pullens and they had come to visit. At the time Pullen drove onto his driveway the Novaks were sitting on some lawn chairs which the Pullens had placed on their lawn just to the south of where Pullen had parked the Lincoln.

When Mrs. Pullen got out of the Olds she took appellant with her and walked to where the Novaks were

seated. She handed appellant to Novak, who took him. Novak was well acquainted with appellant, liked to play with him, and proceeded to do so. After Mrs. Pullen had handed appellant to Novak she, together with Mrs. Novak, went into the house where they stayed until after the accident happened. They apparently entered the house at the southwest corner thereof from a porch located there in a triangular recess of the house. This porch had a railing on the south side thereof, three steps leading down to a sidewalk on the west side thereof, and walls of the house on the north and east sides thereof. The sidewalk ran north and south and crossed the driveway located just south of the house. The Chevrolet was parked so it straddled this walk, the front wheels being to the west and the rear wheels being to the east. The distance between the driveway, which had a single lane for cars, and the house was not very wide especially where the steps which were located on the south side of the house, led down to the basement.

Pullen parked the Lincoln so the front end was just south of a faucet located in the south wall of the house. This faucet had a hose attached which Pullen used to put water in the Lincoln. While he was putting water in the Lincoln Pullen asked Novak if, when Pullen returned the Lincoln to its owner's home, he would follow him (Pullen) in the Olds so Pullen would have transportation from the customer's home back to his home. Novak agreed to do this. Novak then took appellant over to the porch already referred to and put him down on the steps. Novak says the last he saw of appellant, until after he was injured, was when he was on the porch, having climbed there from the step where he had placed him. Pullen testified the last time he saw appellant before he was injured was when he was on the steps of the porch where Novak had taken him.

After putting appellant on these steps Novak proceeded to go to and get into the Olds while Pullen went to the Lincoln for the purpose of driving it. However,

before Pullen got in the Lincoln, Novak called and said he couldn't get the Olds started. Thereupon Pullen went back to the Olds and either told or demonstrated to Novak how to start it. Pullen then started back toward the Lincoln. Pullen, while walking back and forth between the Lincoln and Olds, was at all times to the south thereof. Novak got the Olds started and, after doing so, looked back through the rear window to see if it was all right to back and, seeing nothing, proceeded to do so. It was necessary to back the Olds to get it onto Linden Street and then Nye Avenue as the other cars were blocking the driveway ahead. Pullen heard the Olds start to back just as he was about to get in the Lincoln. He then heard a thud. He hurriedly went between the Lincoln and Olds to the north side of the Olds and there found appellant completely under it. Appellant was lying just under the right door and between the wheels, the Olds being a two-door car. Appellant was seriously injured. There is no evidence as to how appellant got from the porch to where he was injured, a distance of between 45 and 55 feet, as neither Pullen nor Novak ever saw him when Novak placed him on the steps of the porch. Because of appellant's height, which was about 30 inches, it would not have been possible for Novak to have seen him by looking through the rear window of the Olds as that was at least 4 feet above the ground.

We think the duty of a driver of a motor vehicle as it relates to children, whether it be on a public thoroughfare or private driveway, is well stated in 5 Am. Jur., Automobiles, § 185, pp. 607-8 as follows: "The driver of an automobile is not an insurer against injuries to children from the operation of the car. He is bound to exercise ordinary, reasonable, or due care towards children as well as towards adults. The age, maturity, and intelligence of the child is a circumstance to be considered in determining whether or not the driver has exercised such care. Actually, in certain instances,

the driver may be required to exercise greater care towards children than towards adults, but this greater care is, in one sense, but 'ordinary' care, namely, that degree of care which a man of ordinary prudence would exercise under the circumstances."

As stated in 2A Blashfield, Cyclopedia of Automobile Law and Practice, under the heading Children, Negligence of Motorists: "* * * he is not justified in assuming that a young child will manifest the judgment and prudence of an experienced man, and must govern his own conduct with some reasonable degree of respect of that fact; the standard of care to be exercised by motorists being that of an ordinarily prudent man under the same circumstances." § 1492, p. 383. "If a driver has reason to anticipate that a child might be near his automobile, it is his duty to see that the way is clear before starting the vehicle into motion, but, if he has no reason to anticipate the presence of children near his car, negligence cannot be predicated on the mere fact that he started his machine, injuring the child." § 1509, p. 440. "Ordinarily a driver is not required to search for children on the running board on the far side of the vehicle, or hidden underneath or in front of it, whom he cannot see before starting." § 1509, p. 443.

These same principles are stated in 60 C. J. S., Motor Vehicles, § 396(d), p. 972, as follows: "The operator of a motor vehicle is required to exercise ordinary or reasonable care under the circumstances, before and while starting or backing his vehicle, with respect to any children who may be in the vicinity; and, where he has reason to anticipate that a child may be near his vehicle, it is his duty to see that the way is clear before starting it in motion. He is not ordinarily required to search for children hidden underneath or in front of his vehicle, whom he cannot see before starting, and, if he has no reason to anticipate the presence of children near the vehicle, or if the child is with an adult who is in a position easily to take care of it, negligence cannot

be predicated on the mere fact that he started his car and injured the child." See, also, Comer v. Travelers Ins. Co., 213 La. 176, 34 So. 2d 511; Trowell v. Diamond Supply Co., 46 Del. 318, 83 A. 2d 691; White v. Edwards Chevrolet Co., 186 Va. 669, 43 S. E. 2d 870; O'Neil v. Cochrane, 184 Minn. 354, 238 N. W. 632; Williams v. Cohn, 201 Iowa 1121, 206 N. W. 823.

As we said in De Griselles v. Gans, 116 Neb. 835, 219 N. W. 235: "Until a driver of an automobile has notice of the presence or likelihood of children near his line of travel, he is bound only to the exercise of reasonable care, and has the right to assume that others will do likewise; and until he has such notice the rule is the same as respects children and adults."

The evidence shows Novak placed appellant, who was then 21 months of age and who had just learned to walk fairly well, on or near the porch, which has been hereinbefore referred to and which was a distance some 45 to 55 feet from the point where appellant was hit; that thereafter Novak saw appellant on this porch; that Novak then went back to where the Olds had been parked; that he got into the Olds and, with Pullen's assistance, got it started; that after he got the Olds started he proceeded to back away from where he had last seen appellant on the porch, looking back through the rear window of the Olds as he did so to see if he could safely back; and that after backing up about 8 feet the Olds hit appellant in some manner and inflicted serious injuries upon him.

It is true that Novak knew appellant was on the porch some 45 to 55 feet away but that can hardly be said to be near or in the immediate vicinity of the Olds. Novak had no reason to anticipate that appellant had left the porch and had come into a place of danger around or under the Olds as he started to back it along the private driveway away from where he had placed appellant. It clearly appears that neither he nor Pullen anticipated such a move on the part of appellant. Under

these circumstances we do not think the facts adduced by the evidence present a jury question on the issue of whether or nor Novak can be said to have been guilty of negligence which was a proximate cause of the appellant's being hit and injured. We think Novak did all an ordinarily prudent man would have done or could be expected to do under the circumstances.

While appellant, on account of his tender age, can not be charged with either negligence or contributory negligence, however, if his acts, whether negligent or not, were the proximate cause of his injuries, there can be no recovery from Novak in this action. De Griselles v. Gans, *supra*.

Since, as a matter of law, we have come to the conclusion that Novak was not guilty of any conduct toward appellant that could be the basis for any recovery herein, Boysen likewise could not be held liable for any conduct of Novak, even assuming Novak was a servant or subagent of Boysen under the circumstances herein established, a question we do not decide, for such liability is purely derivative as will be more fully discussed hereinafter.

Pullen was an employee of Boysen at the time of the accident and, under the evidence herein adduced, applying thereto the principles hereinbefore set forth, the question of whether or not he was acting within the scope of that employment when he stopped at his home while returning the Lincoln to its owner's residence would be for a jury. See Dafoe v. Grantski, 143 Neb. 344, 9 N. W. 2d 488. As stated therein: " 'Whether the act was or was not such as to be within the scope of his employment is, ordinarily, one of fact for the determination of the jury.' "

As we said in Van Auker v. Steckley's Hybrid Seed Corn Co., 143 Neb. 24, 8 N. W. 2d 451: "The law imputes to the principal or master reponsibility for the negligent acts of his agent or servant done in obedience to the express orders or directions of the master or within

the scope of the employee's authority or employment in his master's business, and if those acts cause injury to third persons the law holds the principal or master liable in damages therefor."

Here appellant alleged Pullen was negligent in four different respects which, by Pullen's demurrer, he admitted to be true. Even so, can Pullen, the father, be held liable therefor?

The cases from other jurisdictions run strongly to the effect that an unemancipated minor, such as appellant was and is, cannot maintain an action against his parent, or any other person standing in that relation to the minor, to recover damages for negligence. See, annotation of the subject, "Liability of parent or person in loco parentis for personal tort against minor child," as found in 19 A. L. R. 2d, Annotation, 423. See, also, Annotations, 122 A. L. R. 1352; 71 A. L. R. 1071; 31 A. L. R. 1157. The reason for the rule is stated in Meece v. Holland Furnace Co., 269 Ill. App. 164, as follows: "It is a rule of common law based upon public policy that a minor child cannot sue his father in tort unless a right of action is authorized by statute."

However, Nebraska has adopted a modified version of this rule. See, Nelson v. Johansen, 18 Neb. 180, 24 N. W. 730, 53 Am. R. 806; Clasen v. Pruhs, *supra;* Fisher v. State, 154 Neb. 166, 47 N. W. 2d 349. In 122 A. L. R., at page 1356, the first two of these cases are cited under the statement, and we think correctly, that where torts have been committed by parents or persons standing in the place of parents: "* * * the court recognizing that there might be recovery by a minor for such torts where the child is subjected to * * * brutal, cruel, or inhuman treatment * * *." As we said in Clasen v. Pruhs, *supra:* "It is a question of fact to be determined by the jury whether or not the punishment inflicted was, under all the circumstances and surroundings, reasonable or excessive."

While this latter issue would ordinarily be a ques-

tion of fact for a jury to determine, if the evidence adduced in relation thereto presented a question of fact in that regard, however, we do not think the evidence here adduced presents such an issue as a question of fact. We find that generally an unemancipated minor cannot maintain an action against his parents, or any other person standing in that relation to the minor, to recover damages for ordinary negligence. The foregoing has application here.

We come then to the question, if the father cannot be held liable for his negligence can his employer be so held? We think not, under the situation here presented, for the following reasons.

It should be remembered that Boysen's liability, if any, is not that of a joint tort feasor but derivative solely from the liability of Pullen, if any. As we said in Emerson v. Western Seed & Irr. Co., 116 Neb. 180, 216 N. W. 297, 56 A. L. R. 327, by quoting from Doremus v. Root, 23 Wash. 710, 63 P. 572, 54 L. R. A. 649: " 'For injuries caused by the negligent act of an employee not directed or ratified by the employer, the employee is liable because he committed the act which caused the injury, while the employer is liable, not as if the act was done by himself, but because of the doctrine of respondeat superior, the rule of law which holds the master responsible for the negligent act of his servant, committed while the servant is acting within the general scope of his employment and engaged in his master's business.' "

As was said in Maine v. James Maine & Sons Co., 198 Iowa 1278, 201 N. W. 20, 37 A. L. R. 161: "The liability of the employer for the negligent acts of his servant is based upon the familiar doctrine of respondeat superior. Unless the servant is liable, there can be no liability on the part of the master." The court went on to say: "Where there is no right of action in the wife for a wrongful or negligent personal injury inflicted upon her by her husband, there can be no liability

therefor on his part; and, since there is no liability on his part, we see no escape from the conclusion that his employer can not be made to respond in damages to her for his negligent act." See, also, Meece v. Holland Furnace Co., *supra;* Ownby v. Kleyhammer, 194 Tenn. 109, 250 S. W. 2d 37; American District Telegraph Co. v. Kittleson, 179 F. 2d 946.

In Emerson v. Western Seed & Irr. Co., *supra,* we held a married woman could not sue her husband to recover damages for injuries to her person and consequently she could not sue her husband's employer for damages caused by the husband's negligence, stating as the reason for so holding that: "It would seem that to permit a recovery against the employer results simply in countenancing an encircling movement where a frontal attack upon the husband is inhibited." The basis for that holding is the following quoted in that opinion from Doremus v. Root, *supra:* " 'The primary liability to answer for such an act, therefore, rests, upon the employee, and when the employer is compelled to answer in damages therefor he can recover over against the employee.' " See, also, Maine v. James Maine & Sons Co., *supra;* Myers v. Tranquility Irr. Dist., 26 Cal. App. 2d 385, 79 P. 2d 419; Ownby v. Kleyhammer, *supra;* Graham v. Miller, 182 Tenn. 434, 187 S. W. 2d 622, 162 A. L. R. 571. As stated in Ownby v. Kleyhammer, *supra:* " '* * * it follows automatically that the ultimate effect of the judgment in this case is to fasten upon this parent ultimate liability for this recovery in favor of his child, in contravention of the rule that grants immunity to a parent from such liability.' "

Having come to the conclusion that the evidence adduced would not support a verdict that Novak was guilty of negligence the dimissal of the action as to him is affirmed.

Having come to the conclusion that even if Pullen could be said to be guilty of the specific charges of negligence made against him, a question which we assumed in

favor of appellant but factually did not decide, such guilt would not support a verdict in favor of appellant against Boysen because, as we said, appellant could not maintain an action therefor against Pullen. Consequently the trial court's judgment dismissing appellant's action against Boysen was correct and is affirmed.

AFFIRMED.