IN RE ESTATE OF ANNA COOK, DECEASED. EARL COMSTOCK ET AL., APPELLEES, v. E. H. EVANS, ADMINISTRATOR OF THE ESTATE OF ANNA COOK, DECEASED, APPELLANT.

68 N. W. 2d 351

Filed February 11, 1955. No. 33606.

*Baskins & Baskins* and *E. H. Evans,* for appellant.

*Hollman & McCarthy* and *Halligan & Mullikin,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This action originated as a claim against an estate for services rendered a deceased person in her lifetime. Claimants are husband and wife, and will hereinafter be referred to as plaintiffs. The administrator of the estate will hereinafter be referred to as defendant. The deceased will be referred to as Mrs. Cook.

The claim was allowed in county court for the sum of $7,140. Defendant appealed to the district court where there was a jury trial resulting in a verdict and judgment for the plaintiffs in the sum of $5,321. Defendant appeals, arguing here that the trial court erred in admitting and allowing the jury to consider the evidence of a witness as to the reasonable value of the services rendered, and in not sustaining a motion for a directed verdict.

We affirm the judgment of the trial court.

Plaintiffs pleaded that during the year 1934 they promised the deceased that they would perform services for her to consist of cooking, sewing, personal care, baking, chauffeuring, carpenter work, and other sundry duties to be requested by her; that deceased promised to pay them in money or property upon her death; that they performed the services requested; and that they sought judgment for the reasonable value thereof.

Defendant answered denying generally and specifically that there was any contract between the parties under which any services were rendered; and alleging that the plaintiffs and deceased were friends and neighbors and that services were exchanged upon a voluntary and gratuitous basis.

Defendant made a motion for a directed verdict at the close of plaintiffs' case-in-chief and again after both parties rested. The motions were overruled.

It is clear from the record that the case was tried on the theory of an implied contract. We are not here dealing with a case involving a family relationship nor with the presumptions that follow from it. We are here dealing with a case involving the general rule that where services are rendered by one party for another, and knowingly accepted by him, the law implies a promise on his part to pay what such services are reasonably worth. Bell v. Rice, 50 Neb. 547, 70 N. W. 25.

We state the evidence insofar as it seems necessary to determine the assigned errors that are argued here.

Plaintiffs are an elderly couple and lived, at all times material here, in and near Hershey in Lincoln County.

Mrs. Cook lived on a farm or farms in that neighborhood. Her family at the beginning of this period consisted of her husband, a married daughter and husband, a sister, and a boy whom she raised and who took the name of Joe Cook. The daughter died in 1934, and no further mention is made of the daughter's husband as a member of the family. Mrs. Cook's husband, who had not been in good health and was elderly, died in 1936. This left Mrs. Cook, her sister, and the boy, Joe, as the family unit. Joe was at the home most of the time until he entered the army during World War II. He returned and became employed in North Platte. It is not shown that there was any particular disturbance in the relationship of Joe and Mrs. Cook.

Mrs. Cook owned, lived on, and managed a substantial irrigated farm. She looked to her tenants and her friends for many services. She repeatedly and almost constantly requested services of the plaintiffs. The evidence contains statements of specific times services were rendered by the plaintiff husband, including driving and furnishing his own car, performing errands, and working about the farm and Mrs. Cook's home at her request. Witnesses testified to similar matters generally as having occurred almost time without number. There is also evidence that Mrs. Cook repeatedly, and on many occasions, would advise plaintiffs that she was coming to eat with them, do so, and then take food to her home; and that she repeatedly asked for and was furnished with prepared food, pastries, etc. There is also evidence of sewing which the plaintiff wife did for Mrs. Cook. There is likewise evidence that Mrs. Cook repeatedly said that she expected to pay, and that plaintiffs would be well paid for what they had done and were doing for her. There is mention of money to be paid to the plaintiffs, of property to be willed to them, and of the purchase of a home for plaintiffs in Hershey.

Nothing of this kind was done so far as this record reveals.

Defendant's evidence is corroborative of plaintiffs' evidence so far as services are concerned. It contains statements made by Mrs. Cook that every one who had helped her had been well paid including, either directly or inferentially, the plaintiffs. There is also evidence of one of defendant's witnesses that Mrs. Cook had said plaintiffs had asked her to buy or help them to buy a home in Hershey and that Mrs. Cook did not do it.

Defendant's first argued assignment of error relates to the admission and failure to strike the testimony of a witness for plaintiffs. We accordingly make a more detailed recital of that evidence.

This witness on direct examination testified that he was engaged in the general merchandise and "locker plant" business at Hershey and had been so engaged for 16 years. He was familiar with the market value of labor in that community, and was an employer of labor. He had heard substantially all of the testimony offered by plaintiffs. He knew plaintiffs and Mrs. Cook. Limiting his answer to the time from the spring of 1935 to the date of Mrs. Cook's death in 1952, he was, over objection, permitted to testify that the reasonable value of the services rendered by the plaintiffs was $2 per day.

On cross-examination, he stated that he was "taking an average for the period," "a 16-year period," "the over-all picture of the thing"; that "the man was on call for nearly every day"; that he took into consideration "the mileage, the services and the time they put in"; that these plaintiffs were faithful, stood around and did jobs; that he did not know how many hours or days plaintiffs worked but they were on call every day of the year; and that he took the baking and sewing into consideration in the "over-all services." On cross-examination, the witness further testified that: "In 1934 when the dry times were here and cattle were down a man would earn $3.00 a day," and in "that kind of work" "A dollar

a day for that period"; that being on call "at that time" was worth "a dollar a day" to Mrs. Cook; that he had paid employees on that basis as a "store boy" and for "odd jobs"; that mileage for the use of a car "would be, say seven cents a mile"; that the price of pies was from 55 cents to 70 cents each during the period, and the price of cakes was from 85 cents to $1.95; and that women doing odd jobs were paid $4.50 a week. This evidence went to the specific values of the type of services rendered and things furnished Mrs. Cook by the plaintiffs.

The defendants moved "to strike the testimony of the witness E. T. Young as to the value of the services testified to." The motion was overruled.

The motion for a new trial asserted error in failing to strike the evidence of E. T. Young as to his estimate of value of services and in permitting the jury to consider it. The assigned error here is that the court erred in admitting the testimony of the witness, in not striking it, and in permitting the jury to consider it. The argument here is that the court erred in admitting and in not striking the testimony.

It is patent that the attack from the beginning has been directed to all the testimony of this witness. However, in argument here, the testimony that the services were worth $2 a day is specifically mentioned.

Defendant argues here that by calculation an allowance of $1 a day for 6 days a week for 17 years equals the jury's verdict of $5,321. Assuming that the jury followed such a process, it is obvious that they accepted, not the $2-a-day opinion testified to by the witness on direct examination, but the $1-a-day opinion expressed on cross-examination. In a case involving the value of the services of a plaintiff, we held: "* * * the opinion of a qualified witness as to the value of the services is admissible to prove such value when his testimony will aid the jury and this question is within the judicial discretion of the trial court to decide, and rulings thereon

will not be reversed except in case of manifest error. * * * A witness who has observed the services rendered and has sufficient familiarity with services of that nature to form a reasonable opinion as to their value, is qualified. He need not be an expert in the strict sense of that term if he is shown to be better equipped to determine the value of the services than the jury or men in general. Also, persons engaged in performing services of the same character as those to be valued, and persons who have knowledge of the business in and for which the services have been rendered, and of their value, may give their opinion as to the value of the services." In re Estate of Baker, 144 Neb. 797, 14 N. W. 2d 585, 155 A. L. R. 950. See, also, Missouri P. Ry. Co. v. Fox, 60 Neb. 531, 83 N. W. 744; Omaha Loan & Trust Co. v. County of Douglas, 62 Neb. 1, 86 N. W. 936; Jensen v. Palatine Ins. Co., 81 Neb. 523, 116 N. W. 286; DeVore v. Board of Equalization, 144 Neb. 351, 13 N. W. 2d 451.

We find no manifest error in the rulings of the trial court. The error assigned and argued is not sustained.

Defendant's second argued assignment is that the court erred in not sustaining the motion for a directed verdict.

A motion for a directed verdict challenges the right of the party against whom it is directed to recover in any amount.

The evidence is reviewed here subject to the rule that: "Where a motion for a directed verdict is made the party against whom it is made is entitled to have his evidence accepted as true by the court and he is further entitled to have all favorable inferences reasonably to be drawn therefrom resolved in his favor." Segebart v. Gregory, 156 Neb. 261, 55 N. W. 2d 678.

Obviously under this record there is evidence from which a jury could rightly find that the plaintiffs were entitled to recover in some amount. The trial court

did not err in overruling the motions for a directed verdict.

The judgment of the trial court is affirmed.

AFFIRMED.

CHAPPELL, J., participating on briefs.