IN RE ESTATE OF ROBERT BERG, DECEASED.
CHARLES BOSLE, APPELLANT, v. A. J. LUEBS, EXECUTOR OF THE LAST WILL AND TESTAMENT OF ROBERT BERG, DECEASED, APPELLEE.

98 N. W. 2d 795

Filed October 30, 1959. No. 34650.

*E. Merle McDermott* and *Flansburg & Mattson,* for appellant.

*Luebs, Elson & Tracy,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This action involves a claim filed against the estate of Robert Berg, deceased, by Charles Bosle, hereafter referred to as claimant, for personal services performed by him for the deceased during his lifetime, the claim being on quantum meruit. This action was tried in the district court for Hall County upon an appeal from an order of the county court of said county disallowing the claim of the claimant against the estate of Robert Berg, deceased. Trial was had. At the close of the claimant's case the defendant, A. J. Luebs, executor of the estate of Robert Berg, deceased, moved for a directed verdict. The trial court sustained the motion for directed verdict, basing the same upon the premise that the burden was upon the claimant to prove by a preponderance of the evidence that he had not been paid for his claimed services, there being no evidence to establish that fact. Claimant filed a motion for new trial which was overruled. Claimant perfected appeal to this court.

The claimant's petition on appeal admitted that A. J. Luebs was the executor of the estate of Robert Berg, deceased; alleged that Robert Berg died on July 25, 1957; and alleged that from November 1953, through and until the time of the death of Robert Berg, the claimant, at the special instance and request of Robert Berg, performed personal services and labor for Robert Berg consisting of hauling hay, threshing, furnishing a team and rack, shelling corn, breaking up concrete, fixing fences, surveying land, and other farm work. It was further alleged that said services performed by claimant were of the fair and reasonable value of $935; that Robert Berg promised to pay the claimant for said services but died before making payment; and that claimant filed a claim against the estate of Robert Berg, deceased, within the time provided by law. Claimant prayed judgment in the sum of $935, and costs.

The executor's answer was a general denial of the facts set forth in the claimant's petition relating to the services alleged to have been rendered by the claimant for Robert Berg, deceased, and prayed for a dismissal of the claimant's action.

It appears from the evidence that there was a Robert Berg and a Lawrence Berg, and reference is made to the Berg farm. We will use Robert Berg's name for the reason that the claim is against his estate.

Oscar Searson, the manager of the Alda Grain Company of Alda, Nebraska, testified to an exhibit which constituted a record of grain sold and delivered by Robert Berg from 1954 through 1956. He further testified that he was sure that the claimant hauled some of this grain to the elevator; that very often when shelling corn the claimant's truck was used; that he believed the last time he saw the claimant hauling Robert Berg's corn was in 1956; and that the claimant helped haul corn most of the years this witness purchased corn from the Bergs.

Maynard D. Bosle, a son of the claimant, testified that

his father's farm is half a mile south of the Robert Berg farm; that he farmed with his father who is the claimant in this case; that Robert Berg would come to the claimant's place and ask the claimant to haul hay for him; that this witness helped his father haul hay for Robert Berg in October 1953, and this work took 40 or 50 hours during the months the hay was hauled until the end of the year; that in 1953, his father threshed for Robert Berg, and this work took a day or a day and a half, or 8 or 9 hours; that the reason his father did this work was because Robert Berg's physical condition was poor, and Robert Berg requested the claimant to do it; and that in doing the work, the claimant used his team and rack. He further testified that his father shelled corn on the Robert Berg farm in August 1953, and it took 2 or 3 days because the corn sheller worked slowly; that Robert Berg came to his father's farm when this witness was present and asked his father to help truck the corn, and also asked if it was possible for this witness to help; that his father trucked the corn, using his own truck and furnishing the gas and oil; that the corn was taken to the Alda Grain Company; that in 1954, his father hauled hay for Robert Berg from the first of the year until April, working 12 or 13 days, or 40 to 50 hours; that his father's truck was used in this work and his father furnished the gas and oil for the truck; that his father also hauled hay for Robert Berg for 40 to 50 hours from October to December 1954; that the reason his father hauled hay and shelled corn for Robert Berg was because the latter asked him to; that this corn shelling took place in August or September, and took from 2 to 2½ days; and that the amount of corn shelled was from 3,000 to 4,000 bushels. This witness was in military service from December 16, 1954, to December 14, 1956, and consequently was unable to testify to the work performed by his father for Robert Berg during this period. He further testified that in 1957, his father helped Robert Berg by

doing chores, surveying land, and helping make a cement box; and that he burned stalks, fixed fences, harrowed the land, and also did some disking for him. This work was performed by the father of this witness at the request of Robert Berg around March and April of 1957, and the work took from 20 to 30 days. He further testified that Robert Berg came to his father's place almost every day from the first of January 1957, until he died, to ask his father to help with the work. During this time Robert Berg was in failing health, and the claimant was at Robert Berg's farm every day. He further testified that he was present and recalled a conversation which took place at his father's farm in October 1954, when Clarence Wiese, a veterinarian, and Robert Berg were present. In this conversation Robert Berg asked this witness and his father to help vaccinate some cattle, and they went to Robert Berg's farm in the afternoon to help in this work. The veterinarian told Robert Berg what he charged for his work, and was paid. The veterinarian asked Robert Berg what he was going to pay claimant for the work he did, and Robert Berg said he would "make it good." This witness further testified that he had hauled grain in that area for Robert Berg; and that the going rate for hauling corn in 1953 was from 2 to 4 cents a bushel. This witness testified on cross-examination that in 1953, Robert Berg ran his threshing machine on the claimant's farm, shelled corn thereon, and ran his cement mixer seven or eight times on different jobs on the claimant's farm.

Marvin Gerdes, a farmer, testified that he sold hay to Robert Berg in 1955 and 1956, which amounted to about 30 tons, and the claimant and another person loaded and hauled this hay for Robert Berg.

Otto Albertson, a farmer, testified that he sold hay to the Bergs in 1955, and a stack of hay to them in 1956; that there was approximately 7 or 8 tons of hay in each stack; that the claimant hauled hay with one

truck, and Clarence Luth with another; and that the claimant was using his own truck.

Robert Denman, a farmer, testified that he shelled corn on the Berg farm for the first time in 1956; that the claimant was around the Berg farm at that time, and drove a truck and hauled corn; and that it took about half a day or a little better to do this work.

Wilmer Scheel testified that in the fall of 1956, he was present on the Berg farm where some corn was to be shelled and the claimant was helping with the work; that he had observed the claimant hauling hay and shelling corn; that the claimant used his own truck; and that this witness hauled hay with the claimant in 1955, 1956, and 1957, from many different places. He further testified that the rate of pay for common labor was $1 an hour, and the same amount for threshing; and that the rate including a team and rack was $2.50 an hour.

Robert Beberniss testified that he sold hay to Lawrence Berg (who is now deceased), and saw the claimant hauling hay to the Berg farm in 1955, and in February or March 1956, or some time later; that there were 14, 15, or 16 tons of hay hauled; that the claimant hauled the hay in both years; that Robert Berg was there, as well as the claimant; that they hauled 2 tons of hay to a load; and that it took about half a day to haul one load.

Clarence Wiese testified that he was employed by Robert Berg and Lawrence Berg from 1953 to 1957. He worked on the Berg farm from March until some time in June 1957. His work consisted of doing chores, fixing fences, putting in a well, fixing corrals, vaccinating cattle, and putting in cement forms for wells. He bought materials that the Bergs ordered, and ran errands to Grand Island. For vaccinating and cement work he charged $2 an hour. For common labor he charged $1 an hour. He further testified that he saw the claimant do some work for the Bergs in 1957; that when he was asked to put in a cement form he asked Robert

Berg for help and, as a result, the claimant and his son came to help this witness pour cement and take the form out; that Robert Berg sent the claimant and his son to deliver the form north of Grand Island; that it took about three-quarters of a day to run the form; that he saw the claimant doing chores around the Berg farm; that from 1953 to 1957, this witness saw the claimant thresh and fix fences on the Berg farm; and that in October 1954, he asked Robert Berg who was going to pay the claimant for the work the claimant did for him and Berg said he would pay him. This witness never saw Robert Berg pay the claimant any amount of money. This witness further testified that he was paid $1 to $1.25 an hour for common labor.

There is evidence of one witness on cross-examination that it was the common practice for neighbors to get together and thresh and shell corn in that general area.

The claimant assigns as error that the trial court erred in directing a verdict for the defendant, and in overruling the claimant's motion for new trial.

In determining whether or not the evidence adduced by the claimant is sufficient to make a case for the consideration of the jury, there are certain well-established rules of law to be kept in mind, as follows.

The evidence is reviewed here subject to the rule that: "Where a motion for a directed verdict is made the party against whom it is made is entitled to have his evidence accepted as true by the court and he is further entitled to have all favorable inferences reasonably to be drawn therefrom resolved in his favor." Segebart v. Gregory, 156 Neb. 261, 55 N. W. 2d 678. See, also, Comstock v. Evans, 159 Neb. 739, 68 N. W. 2d 351.

In Umberger v. Sankey, 154 Neb. 881, 50 N. W. 2d 346, it was held: "An action based on quantum meruit for labor and materials furnished is grounded upon an implied promise to pay the reasonable value thereof." The court further said: "It is the rule in pleading a

cause of action based on quantum meruit for the reasonable value of labor and materials furnished that an allegation of a promise to pay impliedly exists in the pleading."

In Sorensen Constr. Co. v. Broyhill, 165 Neb. 397, 85 N. W. 2d 898, it is said: "There being no specific standard by which reasonable value of labor and materials furnished shall be proved, prima facie proof thereof is made where a reasonable inference of such value flows from the evidence adduced." The evidence in this case conforms to this requirement.

As heretofore stated, the trial court, in directing a verdict for the defendant, based the same upon the premise that the burden was upon the claimant to prove by a preponderance of the evidence that he had not been paid for his claimed services, there being no evidence to establish that fact.

In many cases this court has held that the question of payment is a matter of defense, which, to be available, the defendant is required to set up in the answer and establish on the trial. See, Ashland Land & Livestock Co. v. May, 51 Neb. 474, 71 N. W. 67; Burke v. Munger, 138 Neb. 74, 292 N. W. 53; Washington v. Beselin, 141 Neb. 638, 4 N. W. 2d 753.

As said in In re Munro's Estate, 296 Mich. 80, 295 N. W. 567; "In proceeding to recover for personal services rendered decedent, plaintiff is not required to show nonpayment therefor since payment is an affirmative defense to be established by the executor." The burden was not on the plaintiff to prove nonpayment of the obligation, and the burden of proving payment was an issue to be proved by the defendant in the trial of this case.

The evidence in this case contains testimony concerning the services performed by the claimant for the decedent during the latter's lifetime. There is also competent evidence relating to the reasonable value of such services rendered to the decedent by the claimant. In addition,

there is some evidence of a promise by the decedent to pay the claimant.

We conclude that in the light of the evidence and the authorities heretofore set forth, the judgment rendered by the district court in directing a verdict against the claimant should be reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.