IN RE ESTATE OF EMMA NISSEN, DECEASED.
MELVINA HILLIGAS, APPELLANT, V. FRANK M. FARR,
ADMINISTRATOR OF THE ESTATE OF EMMA NISSEN,
DECEASED, APPELLEE.

114 N. W. 2d 764

Filed May 4, 1962. No. 35169.

*E. Harold Powell,* for appellant.

*John E. Dougherty* and *Charles J. Whitney,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

This action arises out of a claim against an estate for alleged services claimed to have been performed between 1945 and 1957 under an implied contract. A jury in district court rendered a verdict for the plaintiff. The court sustained a motion for judgment notwithstanding the verdict, and dismissed plaintiff's petition. Plaintiff appeals.

Plaintiff and appellant, Melvina Hilligas, and her husband, Ralph Hilligas, hereinafter referred to by their proper names, filed a joint claim in the county court for $1,791.50 against the estate of Emma Nissen, deceased. After a hearing, the county judge rendered judgment on the joint claim for $145. The pertinent part of that order is as follows: "This Court now upon consideration of the evidence and the pleadings and written argument submitted finds that claimants have and recover for the following items in the following amounts, to-wit:

"August, 1954, Melvina took Mrs. Nissen to Illinois $35.00

"Ralph Hilligas helped repair horse barn roof 20.00

"In 1956, Ralph Hilligas helped repair cattle barn roof 30.00

"Ralph Hilligas helped clean and plaster cistern 15.00

"July 28-30, Melvina Hilligas assisted her when

she was in hospital before her death in 1957    25.00
"Melvina Hilligas cleaned the milking machine
   in 1957                                        10.00
"Ralph Hilligas hauled calf to town and ar-
   ranged for sale of chickens in 1957          10.00

                        $145.00

and that the claim of Ralph and Melvina Hilligas is allowed in said sum, and that the balance of their claim is disallowed." From this judgment Melvina appealed. Ralph did not join in the appeal but was the chief witness for Melvina in the district court. He also was surety on her appeal bond which was subsequently amended in district court by substituting another surety for him.

The petition on appeal eliminated certain items in the statement in the county court, and prayed for judgment for $1,407.50. The claimed services were in the main for transporting the decedent, who did not drive, to town or to club meetings and on one occasion to Illinois; for fixing her hair; for helping her prepare chickens for the freezer; for helping her with work around her home; for comforting her on one occasion when she had trouble with her hired man; and for taking care of her at the hospital during the last 3 days of her life when Melvina could spare the time away from her son who was hospitalized by the accident which caused Emma Nissen's death. There are also items for caring for and disposing of her bird and her dog during the period of her hospitalization.

Melvina and the deceased lived on neighboring farms. The deceased was a sister of Melvina's mother-in-law, and consequently Ralph's aunt. It is evident from the record that there was a close personal relationship between the two families.

Melvina assigns as error the sustaining of the motion for judgment notwithstanding the verdict. The appellee, administrator of the estate of Emma Nissen, deceased,

contends that Ralph was an incompetent witness; that the statute of limitations barred all of the claim prior to 4 years preceding Emma Nissen's death; that there was no competent evidence of the value of the services alleged to have been rendered; and essentially, that the evidence was insufficient to sustain a verdict.

As we view this record, while there is merit in the other contentions, it is not necessary to consider other than the last one because it is evident that the evidence was insufficient to sustain the verdict.

The law involved is well settled in Nebraska. The burden of proof is upon the claimant seeking compensation for services rendered during the lifetime of a deceased person to prove an agreement express or implied to pay for the services. In re Estate of Benson, 128 Neb. 138, 258 N. W. 60; Breuer v. Cassidy, 155 Neb. 836, 54 N. W. 2d 75.

Where, as here, there is a family relationship between the deceased and the claimant, in order to make a prima facie case claimant is required to rebut by competent evidence the presumption that the services were rendered gratuitously. Christ v. Nelson, 167 Neb. 799, 95 N. W. 2d 128.

Ralph testified that a year prior to her death Emma Nissen said on an occasion when he was present, that: "* * * for the things that Melvina had done for her that she'd be well paid some day." He also testified that during the summer of 1956 Emma Nissen said: "* * * that she had no one else to do anything for her; to take her anywheres; that Melvina would take her and she'd be well paid some day." Subsequent to the death of Emma Nissen, Ralph found an envelope among some discarded papers containing a folded sheet from a memorandum book of some nature. The following in Emma Nissen's handwriting appeared on this sheet, which is exhibit No. 1: "I went (want) Melvina to have my money in bank when I ded (dead)   She is the won

(one) helped me always and my farm goes to my little boy Deryl  Mrs. Emma Nissen."

The above extracts are the sole and only items in the entire record which Melvina could conceivably claim inferred an agreement on the part of Emma Nissen to pay for any services rendered.  The above statements and the memorandum are obviously testamentary in character and lack the formalities prescribed to establish a contract.  As suggested, there is no question the relationship between the parties was close.  It would be natural to assume Mrs. Nissen expected to leave some property to Melvina or her family for past kindnesses.  Exhibit No. 1 is an attempt to do just that.  Unfortunately, exhibit No. 1 is a testamentary document which is not properly executed to be effective as such.

It is evident from the record that neither Melvina nor Ralph expected to be paid for their services as such. No record was kept of the services as they were rendered.  There was never any talk of payment for specific services.  The statements used in the county court and the district court were compiled by Melvina and her counsel after the death of Emma Nissen.  The fact that no accounts were kept at any time over the 12-year period leads to the suspicion that the implied contract was an afterthought when no valid testamentary document was found.  No bill or claim was ever presented to Emma Nissen nor was any demand made for any payment during her lifetime.  The alleged services covered a period of 12 years from the death of Emma Nissen's husband to her own death, yet the declarations set out above were made within the last year of Emma Nissen's life.  There is no way of knowing when the memorandum was written.

Shortly after her husband's death, Emma Nissen procured a hired man who, there is an inference in the record, may have been a relative.  This hired man exchanged work with Ralph.  He was also killed in the accident which claimed Emma Nissen's life.

Evidence to establish a contract must show something more than a mere possibility, guess, or conjecture. The acts performed are entirely consistent with neighborliness, friendship, and the relationship which existed between the parties. With reference to the portion of the claim for transportation of the deceased, there certainly was no agreement to pay mileage on any of the occasions listed. With specific reference to transportation to club meetings, Melvina was also a member of the club, and the deceased was her neighbor. With reference to the charge for dressing the hair of the deceased, Melvina was not a professional hairdresser and it would not be in the least unusual for her to help her husband's aunt with her hair. Nor does it seem unusual for her to help her husband's aunt with particular household tasks such as dressing chickens. There is some evidence that the deceased on occasion also helped Melvina.

It will serve no purpose to analyze each of the individual items in Melvina's claim because we do not feel that the services were performed under circumstances sufficient to establish an implied contract. We believe the services when rendered were intended to be gratuitous, with the hope of eventual reward in the form either of a gift or as the beneficiary of Emma Nissen's estate. Where one renders personal service to another merely upon the expectation of a legacy, unless there is a contract obligation, the promisee takes his chance of receiving the legacy and, if his expectations are disappointed, he can recover nothing. In re Miller's Estate, 136 Pa. 239, 20 A. 796.

As suggested above, the testimony falls far short of establishing an implied contract to pay for the services rendered. The motion for a directed verdict should have been sustained. Consequently, the motion for judgment notwithstanding the verdict was properly sustained and the judgment is affirmed.

AFFIRMED.

SIMMONS, C. J., participating on briefs.