IN RE ESTATE OF WINFIELD C. HADDIX, DECEASED. ADNA GREENE, APPELLANT, v. LARRY W. HADDIX, PERSONAL REPRESENTATIVE OF THE ESTATE OF WINFIELD C. HADDIX, DECEASED, APPELLEE.

320 N.W.2d 745

Filed June 11, 1982. No. 44121.

Tedd C. Huston and David C. Huston, for appellant.

John O. Sennett and Black & Sennett, for appellee.

Heard before Boslaugh and White, JJ., and Clark and Knapp, D. JJ., and Ronin, D.J., Retired.

Knapp, D.J.

Adna Greene, hereinafter called claimant, filed a claim in the estate proceedings of her deceased brother, Winfield C. Haddix, in the amount of $10,000 (later amended to $15,050), for personal and domestic services alleged to have been provided by her to decedent, their mother Sarah Haddix, and another brother, Cecil Haddix, from January 1, 1967, to July 1978, pursuant to an oral contract entered into by claimant and decedent on Thanksgiving Day 1966. The claim was disallowed by decedent's personal representative. Upon trial, the county court of Sherman County found that claimant had not proved with sufficient specificity the amount and value of the services allegedly performed, but did allow her $3,250 for mileage and $255.03 for merchandise purchased and delivered.

Claimant appealed to the District Court, where, following trial and after more than 6 hours of deliberation, a verdict for the estate was returned, signed by 10 of the 12 jurors.

Claimant appeals to this court, her 10 assignments of error encompassing essentially these three contentions: That the verdict is not sustained by and is contrary to the evidence; that the trial court erred in giving and in failing to give certain instructions; and that the trial court erred in refusing to consider the affidavits of three jurors offered in support of a motion to reconsider claimant's motion for new trial.

Claimant's evidence, in essence, was that, pursuant to request by her brothers, Winfield Haddix and Cecil Haddix, she agreed to furnish domestic services to them and to their mother at their farm home in Sherman County, Nebraska; that this request was made on Thanksgiving Day 1966; and that Winfield

Haddix promised she would be paid for her services, although the times for and methods of payments, or amounts thereof, were not then, or ever, discussed or agreed upon. Thereafter, commencing January 1, 1967, claimant drove from her home to the Haddix farm, a 70-mile round trip, at least once each week for the next 11½ years, performing such services as cooking, cleaning, laundering, chopping and sawing wood, attending to her invalid mother's personal needs, and also supplying miscellaneous items of food and clothing. Cecil died June 23, 1974; Sarah died May 16, 1975; and Winfield died July 30, 1978. None of the three paid claimant anything during their lifetimes, nor did they make any provision for her in their respective wills. No disinterested witness corroborated claimant's assertion that Winfield had promised her payment; however, her son, James Greene, testified that he was present during part of the Thanksgiving 1966 conversation, and that Winfield said, "I'll pay you when we get the money or something like that."

Rules applicable to this case include: The burden of proof is upon the claimant seeking compensation for services rendered during the lifetime of a deceased person to prove an agreement, express or implied, to pay for the services. *In re Estate of Benson,* 128 Neb. 138, 258 N.W. 60 (1934). Where there is a family relationship between deceased and claimant seeking compensation for services, claimant must rebut by competent evidence the presumption that the services were rendered gratuitously. *Hilligas v. Farr,* 173 Neb. 735, 114 N.W.2d 764 (1962). Where one renders personal services to another merely upon the expectation of a legacy, unless there is a contract obligation, the promisee takes his chance of receiving the legacy, and if his expectations are disappointed, he can receive nothing. *Hilligas v. Farr, supra.*

The jury was instructed in accord with these rules.

In addition to claimant's evidence set forth above, the record discloses that not once during the 11½ years did claimant ask her mother or brothers for any payment; she never presented them a bill for any of the merchandise allegedly purchased; she kept no records of any kind reflecting the days or hours of her visits, the services performed, the mileage accrued; and she "eased off" in her visits subsequent to her mother's death. Furthermore, on cross-examination, claimant responded as follows: "Q You never did take any action for the recovery of these monies either for your services for the trips for the items that are on those checks or for the eggs or anything else until after Winfield died and you learned that you did not receive anything out of the estate, is that right? A I was supposed to be paid. They didn't have the money to pay me along as I went and I was supposed to be paid when the last one was gone. Q You were supposed to get something from the last one's estate - - - A Yes. Q - - - to compensate you or make everything, right as far as the time that you had spent? A Yes." This is the sole reference in the record to any agreement between Winfield, Sarah, and Cecil, or any of them, on the one hand, and claimant, on the other, that her services were to be paid for out of the estate of the last of the three to die. The jury could well have found, under the evidence, that claimant had failed to meet her burden of proving an agreement, either express or implied, to pay for her services; had failed to rebut, by competent and satisfactory evidence, the presumption that her services were rendered gratuitously; and, further, that the services were apparently rendered merely upon the expectation of a legacy, if not from decedent, from his mother or brother, whoever died last. The verdict is not contrary to the evidence, but is clearly supported thereby.

At the instruction conference claimant's counsel

objected only to the court's instruction No. 8, stating: "[I]t is all right as far as it goes but that claimant's requested number 2 should also be included." Instruction No. 8 provided: "If you find that the deceased promised the claimant that his will would provide payment for her services, but that deceased failed to do so, claimant is entitled to recover the reasonable value of services rendered. If, however, she rendered the services solely in reliance on the deceased person's generosity, and the claimant was only hoping that there would be a gift by his will, then no action may be maintained for the value of the services."

Claimant's requested instruction No. 2, refused by the court, provided in part: "You are instructed that if payment for services was to be made by a *conveyance* or devise . . . ." (Emphasis supplied.) Claimant asserts that her contention that payment could have been made during decedent's lifetime as well as by will was not presented to the jury. Claimant overlooks the court's instruction No. 2, wherein claimant's position that decedent should have, but did not, compensate her "by his will or in any other manner" is clearly set out. Jury instructions should be considered as a whole. *Abbott v. Northwestern Bell Tel. Co.*, 197 Neb. 11, 246 N.W.2d 647 (1976). So considered, the complained of instruction was not erroneous.

In addition, claimant now asserts that the trial court's instruction Nos. 3 and 4, wherein the court defined "oral contract" and distinguished enforceable contracts from vague and indefinite "agreements," were so phrased as to necessarily confuse the jury. We do not find them so. Moreover, claimant, her counsel having failed to object to those instructions when they were submitted to him for review, is now precluded from raising objections thereto on appeal, absent plain error indicative of a probable miscarriage of justice. *National Bank of*

*Commerce Trust and Sav. Assn. v. Katleman,* 201 Neb. 165, 266 N.W.2d 736 (1978). No such error here appears.

Following denial of claimant's motion for new trial, claimant filed a motion to reconsider claimant's motion for new trial, supported by the affidavits of three jurors, only one of whom had signed the verdict. The affidavits were identical and recited that "the instructions of the Court were confusing in that . . . Affiant believed that the jury must award Claimant, Adna Greene, the full amount of $15,000.00 or nothing at all." The trial court denied the motion, and properly so. While we note that the instructions contained nothing to support the inference that the jurors' options were so restricted, affidavits of jurors as to what they believed they had a right to do under the instructions are incompetent and may not be received to impeach a verdict. A juror's understanding of the instructions constitutes neither extraneous, prejudicial information nor outside influence improperly brought to the jury's attention. *Lambertus v. Buckley,* 206 Neb. 440, 293 N.W.2d 110 (1980); Neb. Rev. Stat. § 27-606(2) (Reissue 1979).

AFFIRMED.