MEISINGER EARTH MOVING, INC., APPELLANT AND CROSS-APPELLEE, V. THE STATE OF NEBRASKA ET AL., APPELLEES AND CROSS-APPELLANTS, NEMAHA NATURAL RESOURCES DISTRICT AND NEMAHA COUNTY, NEBRASKA, INTERVENORS-APPELLEES AND CROSS-APPELLANTS.

324 N.W.2d 387

Filed September 17, 1982. No. 43844.

Young & White, for appellant.

Paul L. Douglas, Attorney General, and Robert G. Avey, for appellees State et al.

Steven G. Seglin of Crosby, Guenzel, Davis, Kessner & Kuester, for appellee Nemaha NRD.

Charles D. Hahn, Nemaha County Attorney, for appellee Nemaha County.

Heard before KRIVOSHA, C.J., McCOWN, and HASTINGS, JJ., and FUHRMAN and CAPORALE, D. JJ.

FUHRMAN, D.J.

This is an appeal by Meisinger Earth Moving, Inc., from a judgment of the District Court of Lancaster County entered in its favor in the sum of $17,387 against the appellee State of Nebraska. This action originated as a claim filed against the State with the Director of Administrative Services, which was denied and then appealed to the District Court.

The action arose out of a contract entered into between the state Department of Roads, the county of Nemaha, and the appellant. The contract provided for the construction of a floodwater retarding structure which would also serve as a county road for Nemaha County. The claim is for damages resulting from the failure of the Department of Roads to furnish, as required by the specifications, sufficient and suitable borrow material and a specific alter-

nate borrow area shown on the plans for construction of an earth embankment.

Nemaha County intervened in the action in the District Court because it was a party to the contract. Nemaha Natural Resources District intervened in the action because it has an agreement with Nemaha County and the State which provides for indemnification in certain instances.

Motions for new trial were filed by all parties and were all overruled. Meisinger takes this appeal from the overruling of its motion for new trial and the State, Nemaha County, and Nemaha Natural Resources District cross-appeal. We affirm.

The State and Nemaha County entered into a contract with Meisinger on July 6, 1977, for the construction of a floodwater retarding structure. The structure would also serve as a county road, replacing a county bridge which had previously washed out. The trial court found that the contract was legal and binding. The detailed plans for the project, which were prepared by the U.S. Department of Agriculture Soil Conservation Service, include the provision for an alternate borrow area which is a part of the contract. The trial court found that the contractor relied on the alternate borrow area as designated in the plans at the time it submitted its bid proposal. The alternate borrow area was to be made available to Meisinger within the discretion of the state engineer, and the trial court found that the state engineer on more than one occasion informed Meisinger that the alternate borrow area must be made available to it. The trial court further found that the alternate borrow area was not made available to Meisinger.

The plans call for the excavation and placement of 127,330 cubic yards of compacted Class A fill which Meisinger bid at $.54 per cubic yard. Actually, 134,023 cubic yards of compacted fill were placed in the dam embankment. The alternate borrow area,

if it would have been made available to Meisinger, could yield approximately 24,000 yards of compacted fill.

Meisinger began construction on July 19, 1977, and on November 18, 1977, shut down the operation because of weather conditions. During construction there was an excessive rainfall which affected Meisinger's ability to complete the job. During the spring and summer of 1978 there again was excessive rainfall which prevented Meisinger from resuming work until September of 1978. The wet conditions brought about by the excessive rainfall inhibited the ability of Meisinger to complete the job and ultimately caused it to incur additional cost.

The trial court found that Meisinger was required to incur additional cost from September 25, 1978, until October 27, 1978, because it was not afforded the opportunity to utilize the alternate borrow area and had to remove fill from the conservation pool under adverse conditions. The trial court further found that a written work order, as required by the contract, to incur additional cost by Meisinger was not necessary since the State directed Meisinger to go back into the conservation pool under adverse conditions and remove the fill, thereby waiving any right that the State had to require a written work order.

The trial court found that the State is liable to Meisinger for a portion of the additional cost incurred by Meisinger from September 25, 1978, until October 27, 1978. The trial court further found that the proper measure of damages is the actual cost incurred by Meisinger because of the work it was required to perform from September 25, 1978, until October 27, 1978, less the amount it would have cost Meisinger to remove the fill from the alternate borrow area if it had been made available. The court further found that Meisinger is entitled to a reasonable allowance for overhead, but not for profit. The trial court found, in its discretion, that this

was not an appropriate case for allowance of profit.

Meisinger had claimed that two of its model 860 scrapers were damaged from use under adverse conditions resulting from a breach in the contract and failure to provide the alternate borrow area. The trial court found that Meisinger had not proven damages for excessive overhauls to the two scrapers and that the evidence which Meisinger submitted was speculative. The trial court further found that there was no proof that the repairs to the equipment were the proximate result of the additional work which Meisinger performed in the conservation pool.

The trial court found that if the alternate borrow area would have been made available, 24,000 cubic yards of compacted fill could be removed from the alternate borrow area. The court further found that at the time Meisinger requested the alternate borrow area and the state engineer agreed that it should be made available, there were 37,000 compacted yards of fill needed to complete the structure. The trial court further found that Meisinger was required to remove 13,000 compacted yards of fill from the conservation pool under adverse conditions, even if the alternate borrow area would have been made available.

The trial court found that Meisinger was entitled to recover additional costs incurred as follows:

| | |
|---|---|
| Labor and maintenance | $ 8,896 |
| Insurance | 1,779 |
| Operating expense | 11,256 |
| Equipment | 22,863 |
| | $44,794 |
| Overhead 10 percent | +4,479 |
| | $49,273 |

Less 35 percent which represents the 13,000 compacted cubic yards of fill required to be moved from the conservation pool even if the alternate

| | |
|---|---|
| borrow area was available | $-\,17,246$ |
| | $\overline{\$32,027}$ |
| Less cost of moving 24,000 cubic yards of fill from alternate borrow area if it had been available | $-\,14,640$ |
| Total Damages | $\overline{\$17,387}$ |

A review of the record indicates that the trial court's factual findings are supported by the record and are not clearly erroneous. They are entitled to affirmance.

Meisinger claims that it should be allowed profit, contrary to the trial court's decision. The trial court held the allowance of profit is discretionary and further found that this case was not an appropriate case for the allowance of profit, in accordance with the principles examined and recognized in *Omaha P.P. Dist. v. Darin & Armstrong, Inc.,* 205 Neb. 484, 288 N.W.2d 467 (1980). The trial court also found that there was authority for disallowing profit in *Roberts Constr. Co. v. State,* 172 Neb. 819, 111 N.W.2d 767 (1961).

Reasonable profits may be allowed as part of an award of damages in a breach of contract action where the damages are granted as part of the original contract price, but those calculated on the excess damage award are ordinarily barred. *Omaha P.P. Dist. v. Darin & Armstrong, Inc., supra.*

In an equitable adjustment case the allowance of profit is not mandatory but is discretionary, and in an appropriate case profit may be denied altogether, even profit computed on the original contract basis. *Omaha P.P. Dist. v. Darin & Armstrong, Inc., supra.*

The trial court made it clear in its memorandum opinion that it was relying on the principles in the *Omaha P.P. Dist.* case.

The trial court also cites the *Roberts Constr. Co.* case only insofar as it was a situation where this court recognized the disallowance of profit. This

court said: "Thus, the trial court allowed as damages an amount equal to approximately one-half of the excess labor cost claimed by Roberts and made no allowance for pay roll taxes and insurance, other expense which Roberts attributed directly to the delay, general overhead expense, or profit." *Roberts Constr. Co. v. State, supra* at 824, 111 N.W.2d at 770.

Meisinger further claims that the trial court erred in holding that it neither proved the proximate cause nor the extent of damages resulting from the operation of its equipment under adverse conditions.

The trial court found that Meisinger worked under adverse conditions. However, the testimony reflects that Meisinger used the equipment on jobs other than this project in both 1977 and 1978. The testimony also reflects that the damage could have been caused by poor maintenance. Errol Meisinger testified that repair work on one of the scrapers' engines could have been caused by low water in the radiator or a defective governor. He admitted that it was not unusual for an engine to get a cracked head and this could cause the problems which necessitated the repairs on the scraper engine. Meisinger's testimony was that he had not personally checked the machines on a day-to-day basis, but that he had people to do that. However, there is no testimony from those individuals that Meisinger claimed performed the day-to-day preventive maintenance.

The evidence shows that there was insufficient proof that the repairs to the equipment were the proximate result of the additional work which the contractor performed in the conservation pool. The evidence shows that the damage to the engines could just as easily have been caused by negligent maintenance, negligent operation, or because of low water in the radiator or a defective governor.

With respect to the award of damages this court has said: "The plaintiff has the burden to prove the amount of damages with as much certainty as the

case permits." *LeRoy Weyant & Sons, Inc. v. Harvey and Classic Lanes, ante* p. 65, 68, 321 N.W.2d 429, 431 (1982). A review of the record indicates that the trial court's findings are supported by the evidence and are not clearly erroneous.

The appellees in their cross-appeal claim that Meisinger cannot recover for additional costs which it incurred because of extra work since no written authorization existed. The contract provides in its last substantive paragraph as follows: "It is further understood and agreed that the party of the second part [Meisinger] shall not do any work or furnish any materials not covered and authorized by this contract, unless ordered in writing by the Engineer."

The trial court found that a written work order to incur additional cost by Meisinger was not necessary since the State directed Meisinger to go back into the conservation pool under adverse conditions and remove the fill, thereby waiving any right that the State had to require a written work order.

In the Standard Specifications for Highway Construction, which is incorporated as part of the contract, "extra work" is defined as "an item of work not provided for in the contract as awarded and found essential to the satisfactory completion of the contract within its intended scope."

Nowhere in the trial court's memorandum and judgment does the phrase "extra work" ever appear. The trial court found that Meisinger was required to incur "additional cost" from September 25, 1978, until October 27, 1978, because it was not afforded the opportunity to utilize the alternate borrow area and had to remove fill from the conservation pool under adverse conditions.

AFFIRMED.