377 N.W.2d 98 (1985)
221 Neb. 349
Bill and Stella LIS, Husband and Wife, Appellants,
v.
MOSER WELL DRILLING & SERVICE, INC., a Nebraska Corporation, Appellee.
No. 84-691.
Supreme Court of Nebraska.
December 6, 1985.
*99 Richard D. Sievers, Lincoln, for appellants.
Rex R. Schultze of Perry, Perry, Witthoff, Guthery, Haase & Gessford, P.C., Lincoln, for appellee.
KRIVOSHA, C.J., and CAPORALE and SHANAHAN, JJ., and GARDEN, D.J., and COLWELL, D.J., Retired.
CAPORALE, Justice.
Plaintiffs, Bill and Stella Lis, husband and wife, appeal from the dismissal of their suit for damages arising out of the breach of a contract by the defendant, Moser Well Drilling & Service, Inc., a Nebraska corporation. The Lises' dispositive assignment in this court is that the county and district courts erred in ruling that they failed to prove their damages. We affirm as to Stella Lis and reverse and remand with the direction that judgment be entered in favor of Bill Lis.
The Lises own real estate on which a water well was drilled when their house was built. Approximately 13 years later, on May 31, 1982, Bill Lis contracted to purchase a water supply and heat exchange system from Moser. The system was designed to provide water for household uses and to take water from the supply well, extract the thermal value therefrom, circulate air thus chilled or warmed through the house, and discharge the water used by the heat exchange portion of the system into a second, or return, well.
Moser elected to design the system so as to use the well already on the property as the return well. It became apparent as soon as the installation was completed, however, that this well would not accept all of the discharge water; it overflowed, thereby causing the discharge water to flood the Lises' property. Because of this malfunction, Bill Lis refused to pay the full contract price. As a consequence, Moser agreed to acidize the well, that is, wash it out with an acid solution. As part of that undertaking, Moser wrote that it did "not expressly [sic] or imply any form of a warranty on the return well for any defects it might have in the future after we get it to accept water without running water over the top of the well." Moser thereafter acidized the well twice; later blew air into it; and finally deepened it. Following each of these procedures, the return well accepted all of the discharge water for short periods, but then began to overflow again. Bill Lis paid the remainder of the purchase price after the first short successful operation of the system.
A fair summary of the Lises' evidence is that a new return well would likely solve the overflow problem. Moser's evidence is that there is a 50-percent chance that a new return well would solve the problem and that additional acidization or other procedures might have as good a chance to solve the problem.
The uncontroverted evidence is that a new return well would cost $2,000.
The county court found that "a breach of contract" had been proved but that the *100 Lises fell "short on their proof of damages."
This being a suit on a contract, it is an action at law. Occidental S. & L. v. Bell Fed. Credit Union, 218 Neb. 519, 357 N.W.2d 198 (1984). That being so, the findings and conclusions of the county court have the effect of a jury verdict and will not be set aside by this court unless they are clearly wrong. Schmode's, Inc. v. Wilkinson, 219 Neb. 209, 361 N.W.2d 557 (1985); H & L Equip. v. Schardt, 217 Neb. 653, 349 N.W.2d 924 (1984).
Moser contends that its undertaking was only to acidize the well, which it did. The county court in effect found that Moser's undertaking was to solve the overflow problem, as contended by the Lises. The record supports that finding. Moser's statement that it made no warranty once it got the return well "to accept water without running water over the top of the well" is certainly susceptible to the interpretation that Moser agreed not to get the return well to accept the discharge water for short, intermittent periods of time but, rather, to solve the overflow problem so the system would function as designed.
The question therefore becomes whether it can be said that the county court's finding that the Lises failed to prove damages is clearly wrong.
The finding is clearly correct with respect to Stella Lis. Her name appears on none of the contract documents. She simply was not a party to the transaction, and, thus, there is no basis upon which to include her as a party to this lawsuit.
As to Bill Lis, however, the matter requires further analysis.
We have said in construction contract cases that if the contract is substantially performed, the damages which the owner suffers because of defective workmanship or the use of unsuitable materials are measured by the reasonable cost of remedying the defects, if remediable; if the defects are not remediable without reconstruction of or material injury to a substantial portion of the building, the damages are measured by the difference between the value of the building as constructed compared to what its value would have been if constructed according to the contract. Nekuda v. Vincent, 213 Neb. 527, 330 N.W.2d 477 (1983); Moss v. Speck, 209 Neb. 46, 306 N.W.2d 156 (1981); Fink v. Denbeck, 206 Neb. 462, 293 N.W.2d 398 (1980). We applied the same rule in a case involving the improper preparation of a surface for grading and paving. ARL Corp. v. Hroch, 201 Neb. 422, 268 N.W.2d 101 (1978). We conclude the rule applies as well to an improvement such as is involved in this case.
In view of the uncontroverted evidence concerning the cost of a new well, implicit in the county court's conclusion that Bill Lis did not prove his damages is the finding that the overflow problem is not remediable.
The county court was certainly free to accept Moser's testimony that there was but a 50-percent chance that a new return well would solve the overflow problem. There is also, however, uncontroverted evidence that wells are by their nature unpredictable and that no one can accurately foretell the result of a particular remedial procedure in the circumstance presented by this case.
It is clear that as the party seeking recovery, Bill Lis has the burden of proving his damages with as much certainty as the case permits. Nebraska Truck Serv. v. U.S. Fire Ins. Co., 213 Neb. 755, 331 N.W.2d 266 (1983); Meisinger Earth Moving, Inc. v. State, 212 Neb. 554, 324 N.W.2d 387 (1982); LeRoy Weyant & Sons, Inc. v. Harvey and Classic Lanes, 212 Neb. 65, 321 N.W.2d 429 (1982); Settell's, Inc. v. Pitney Bowes, Inc., 209 Neb. 26, 305 N.W.2d 896 (1981). Proof to a mathematical certainty, however, is not required; the proof is sufficient if the evidence is such as to allow the trier of fact to estimate the actual damages with a reasonable degree of certainty and exactness. Peterson v. North American Plant Breeders, 218 Neb. 258, 354 N.W.2d 625 (1984); *101 LeRoy Weyant & Sons, Inc. v. Harvey and Classic Lanes, supra.
In applying those rules to the present case, we must conclude that proving the cost of installing a new return well is sufficient as a matter of law to establish Bill Lis' actual damages with as much certainty as the case permits. We must therefore conclude the county court was clearly wrong in ruling that Bill Lis failed to prove his damages and that the district court erred in affirming the county court's judgment as to him.
Accordingly, the cause is remanded to the district court with the direction that it be remanded to the county court for the entry of judgment in the sum of $2,000 in favor of Bill Lis. The judgment of the district court dismissing Stella Lis' action is affirmed.
AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTION.