IN RE ESTATE OF ADELLA KRUEGER, DECEASED.
EUGENE BREDEHOFT, APPELLEE, V. RONALD L. CHRISTENSEN,
PERSONAL REPRESENTATIVE OF THE ESTATE OF ADELLA KRUEGER,
DECEASED, APPELLEE; GLENDORIS A. KRUEGER, PERSONAL
REPRESENTATIVE OF THE ESTATE OF WALTER KRUEGER, DECEASED,
APPELLANT.
455 N.W.2d 809

Filed June 1, 1990.    No. 88-497.

Brian F. Beckner for appellant.

Noyes W. Rogers, of Leininger, Grant, Rogers & Maul, for appellee Bredehoft.

Robert L. Mills, of Mills, Mills & Papik, for appellee Christensen.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

This is an appeal from the allowance of a $9,000 claim filed by decedent's nephew for farm work and the handling of his aunt's cow-calf operation from February 1984 until the aunt died on September 28, 1986.

We affirm the order of the district court for Polk County which affirmed the Polk County Court's allowance of the nephew's claim against the aunt's estate.

On appeal, the personal representative of the estate of the decedent's brother, in whose name the appeal of decedent's brother has been revived, assigns several errors, which combine to claim that the court erred in (1) admitting hearsay testimony, (2) finding that the evidence was sufficient to meet the claimant's burden of proof, and (3) entering judgment of $9,000, which was excessive and not supported by the evidence.

The judgment of a trial court determining whether a claimant may be reimbursed for services provided a decedent during the decedent's lifetime will not be set aside on appeal unless clearly wrong. *In re Estate of Bouma. Nehls v. Giles*, 206 Neb. 209, 292 N.W.2d 37 (1980). See, also, *In re Estate of Snover*, 233 Neb. 198, 443 N.W.2d 894 (1989) (holding that the

Supreme Court reviews probate cases for error appearing on the record).

In an action at law, an appellate court views the evidence in the light most favorable to the prevailing party. *State v. Smith*, 231 Neb. 740, 437 N.W.2d 803 (1989). An appeal from the allowance of a claim in probate is tried as an action at law. *Gunn v. Emerald, Inc.*, 201 Neb. 635, 271 N.W.2d 334 (1978).

Prior to her death, Adella Krueger (decedent) operated a 335-acre farm in Polk County. Roughly 168 acres were used for cropland, and the remainder was used to grow hay and as pastureland. In 1978 and 1979, Eugene Bredehoft (claimant), a nephew of the decedent's, performed custom work on his aunt's farm. The work involved preparing the ground, planting and cultivating corn, and preparing and planting the wheat ground. For that labor, the claimant was paid $2,500 in 1978 and $2,000 in 1979. As of 1984, the claimant and his brother produced row crops on 168 acres of the decedent's land, distributing 40 percent of the crop to the decedent and retaining 60 percent.

It is undisputed that when the decedent became ill in February 1984, the claimant began handling the decedent's cow-calf operation. It is also undisputed that during the years 1984, 1985, and 1986, the claimant planted, cultivated, harvested, and marketed wheat crops for his aunt and that the aunt received the total sales income of $2,435.55. The record reflects that the claimant also managed the decedent's hay operation and performed other chores on his aunt's farm during the same time period.

From February 1984 until the decedent died in September 1986, her nephew received no payment from his aunt for handling her cow-calf operation; for planting, cultivating, harvesting, and marketing her wheat crops; for managing the decedent's hay operation; or for performing other farm chores during 1984, 1985, or 1986.

The decedent died intestate. Her surviving heirs were Walter Krueger (brother); Robert Krueger (grandnephew); and Eugene and Carroll Bredehoft (nephews). A petition for formal adjudication of intestacy, determination of heirs, and appointment of a personal representative was filed by the claimant on October 3, 1986. A personal representative was

appointed on October 29, 1986. After his aunt's death, the claimant nephew filed his claim for $9,000 against her intestate estate for services during a 31-month period. The personal representative disallowed the claim. On February 25, 1987, the claimant petitioned the county court for allowance of his claim in the amount of $9,000. In his petition, the claimant alleged that during the years of 1984, 1985, and 1986, he managed the decedent's cattle herd; planted, harvested, and delivered wheat; and assisted in harvesting hay. The decedent's brother filed an objection to the claim, and the matter was set for trial.

At the trial, Adella Krueger's personal representative, through his lawyer, stated that he was convinced that the claimant had performed the work for which he had made a claim. The personal representative also told the court that he was inclined to think the claimant ought to be paid. The personal representative's only reservation was whether, because of the aunt-nephew relationship, it was intended that the claimant be paid.

The county judge found that $9,000 was a reasonable amount for the services provided by the claimant to the decedent. The decedent's brother appealed to the district court for Polk County and that court affirmed the Polk County Court.

Before addressing the appellant's assignments of error, it is first necessary to determine whether the decedent's brother properly appealed the county court judgment to the district court. An appellate court cannot acquire jurisdiction of a cause if the court from which the appeal was taken lacked jurisdiction. *In re Guardianship of Potter, ante* p. 149, 453 N.W.2d 755 (1990). The decedent's brother filed a "petition in error" listing the alleged errors of the county court and requesting that the county court's judgment be reversed by the district court. Probate judgments of the county court may not be brought to the district court for review by a petition in error. *Potter, supra.* However, in contrast to *Potter*, in this case the brother timely filed a notice of appeal with the county court prior to filing the "petition in error." In view of the timely notice of appeal filed by the brother, the pleading labeled a "petition in error" was in actuality nothing more than a listing of the

brother's assignments of error. The character of a pleading is determined by its content, not by its caption. *Stigge v. Graves*, 213 Neb. 847, 332 N.W.2d 49 (1983). A docket fee was deposited by the brother. The county court did not require a cash bond or undertaking for the appeal. See Neb. Rev. Stat. § 25-2729(4)(a) (Reissue 1989). There being compliance with § 25-2729, the district court had jurisdiction of the appeal.

In the first assignment of error, the appellant claims the trial court erred in admitting hearsay evidence. At trial, over objection, the claimant testified that the decedent asked him to care for the cow-calf herd and told him that she would pay him when she had extra money. He testified that the same arrangement existed in regard to farming the wheat land and managing the haying operation. The nephew further testified that his aunt never had sufficient funds to pay him and that it took all of her income to provide for her during her illness.

Neb. Rev. Stat. § 27-801(4) (Reissue 1989) provides in relevant part, "A statement is not hearsay if: . . . (b) The statement is offered against a party and is (i) his own statement, in either his individual or representative capacity . . . ."

*Schmidt v. Schmidt*, 228 Neb. 758, 424 N.W.2d 339 (1988), was an action to recover a substantial sum of money allegedly advanced to a son by his mother. The suit was instituted by the mother's conservator and upon the mother's death was pursued by her personal representative. The personal representative in his cross-appeal claimed that the trial court erred in receiving into evidence inadmissible hearsay consisting of conversations between the son and his mother. This court held that since the deceased mother was the real party in interest, her statements to her son did not constitute hearsay under § 27-801(4)(b) and were therefore admissible.

In this case, Adella Krueger was a real party in interest. Her statements requesting that the claimant provide services and promising him that she would pay him when she was able are also nonhearsay statements under § 27-801(4)(b). They were admissible under the reasoning of *Schmidt v. Schmidt, supra*. The brother's personal representative's assignment of error on this issue is without merit.

In the next assignment of error, the appellant contends that

the claimant did not sustain his burden of proving that the decedent agreed to compensate the claimant for his services.

Naturally, the burden of proof is upon the claimant seeking compensation for services rendered during the life of the deceased person to prove an agreement, express or implied, to pay for the services. *In re Estate of Haddix*, 211 Neb. 814, 320 N.W.2d 745 (1982). The uncontroverted competent evidence shows that the decedent asked the claimant to care for her cattle and that she would pay him when she was financially able to do so. There was uncontroverted evidence that the same arrangement existed for other services provided by the claimant.

The Polk County Court ruled in favor of the claimant on the theory of quantum meruit. It is the law of this jurisdiction that "where benefits have been received and retained under such circumstances that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefor, the law requires the party receiving and retaining the benefits to pay their reasonable value." *Hoffman v. Reinke Mfg. Co.*, 227 Neb. 66, 69, 416 N.W.2d 216, 219 (1987).

In this case, the decedent benefited from services provided by her nephew, which services she requested and for which she agreed to pay when she had funds available. Under the circumstances, it cannot be said that the trial court was clearly wrong in finding (1) that the claimant furnished services to the decedent and (2) that it would be inequitable and unconscionable to permit the estate to retain the benefit of the nephew's services without paying the reasonable value therefor.

The appellant further argues that the claimant has not rebutted the presumption that services rendered to family members are performed gratuitously. When there is a family relationship between a decedent and a claimant seeking compensation for services rendered the deceased, the claimant must rebut by competent evidence the presumption that the services were rendered gratuitously. *Haddix, supra*. It has also been said that the presumption diminishes in direct proportion to the remoteness of the degree and nature of the family relationship and the character of the duties performed. *Houser v. Houser*, 178 Neb. 401, 133 N.W.2d 618 (1965); *In re Estate of*

*Baker*, 144 Neb. 797, 14 N.W.2d 585 (1944). Here, the decedent's agreement to pay her nephew for the services he was to render rebuts the presumption of gratuitousness.

Moreover, the cases holding that a claimant performed the services gratuitously are distinguishable. First, the services in this case were of a business nature, which services are not usually performed without remuneration, whereas the cases disallowing claims involved personal, household, or domestic services for which a close relative is not normally compensated. See, e.g., *Haddix supra*; *In re Estate of Bouma. Nehls v. Giles*, 206 Neb. 209, 292 N.W.2d 37 (1980). Secondly, the nephew had provided services on his aunt's farm in the past and had been paid for that labor.

In this case, the nephew testified that he did not keep records of his services, nor does the record reflect that he ever submitted a bill to his aunt or asked her for payment. Some cases indicate that the lack of recordkeeping and demand for payment are important factors. See, *Haddix, supra*; *Hilligas v. Farr*, 173 Neb. 735, 114 N.W.2d 764 (1962). In view of all the circumstances, this case is unlike a situation where a claimant's acts are "entirely consistent with neighborliness, friendship, and the relationship which existed between the parties" and therefore determined to be gratuitous. *Hilligas, supra* at 740, 114 N.W.2d at 767. After reviewing the record for error, we cannot say that the trial court was clearly wrong in finding that the nephew's claim should be allowed.

In the final assignment of error, the appellant claims that the judgment of $9,000 is not supported by the evidence.

An action based on quantum meruit for labor and materials provided is grounded upon an implied promise to pay the reasonable value thereof. *Bosle v. Luebs*, 169 Neb. 186, 98 N.W.2d 795 (1959) (involving a claim against estate that a decedent agreed to pay for farm work but died before making payment). Since there is no specific standard by which the reasonable value of labor and materials furnished shall be proved, prima facie proof thereof is made when a reasonable inference of such value flows from the evidence adduced. *Id*.

Viewing the evidence in the light most favorable to the nephew who was the prevailing party at the trial, it cannot be

said that the trial court was clearly wrong in allowing $9,000 for the claimant's services to the decedent. While the claimant's testimony is unclear in some respects, there is evidence from which the fact finder could conclude that on the average, the claimant spent 3 hours per day for 942 days caring for decedent's cow-calf operation and performing the other services for which he submitted a claim. From the evidence, the court could find that at times, the claimant took his tractor to his aunt's farm every other day to haul large bales of hay to the cattle. It was an 11-mile round trip to his aunt's farm.

Although his brother helped him some, the claimant figured he worked about 3 hours a day doing chores alone. Claimant testified:

> That'd be an hour and a half in the morning, hour and a half in the evening. I'd wait for the tanks to get full of water when doing the chores, feeding the sheep, looking after her poultry, and what little she had, ducks. In this [$]9,000 I am also including preparing this wheat ground, planting it, harvesting it, trucking it, looking after cattle, all the cattle, and giving them their care, whatever it took, grew these cattle. And then looking after the haying operations.

The claimant checked for calving problems, inspected fences, and ensured that the cattle in the cornfield had salt and mineral blocks. At times, it was necessary for the claimant to secure the assistance of a veterinarian. He helped load the decedent's cattle and attended the sales when some of the cattle were sold at the sales pavilion in Columbus. In 1984, the claimant sold 21 head of cattle for $5,117.34; in 1985, he sold 2 bulls and 14 head of cattle for $4,050.52; and in 1986, he sold 31 head of cattle for $7,295.35, for a total of $16,463.21. After the aunt died, the herd, consisting of 38 cows, 1 bull, and 22 calves, was sold for approximately $19,500.

From 1984 until she died, the decedent received all of the proceeds from the sales of the wheat and cattle. As stated, they were used for her care during her prolonged last illness.

Obviously, the trial court accepted the claimant's testimony as to the services he performed. Based upon the claimant's testimony, the allowance of $9,000 for the claimant's work is

less than if it were calculated at the federal minimum hourly wage.

The claimant's testimony was sufficient to show the reasonable value of his services. See *Matter of Estate of Raketti*, 340 N.W.2d 894 (N.D. 1983) (holding that when the nature and rendition of services has been shown, the claimant's testimony concerning his or her opinion as to the value of the services is sufficient evidence). See, also, *Ritzau v. Wiebe Constr. Co.*, 191 Neb. 92, 214 N.W.2d 244 (1974) (determining that a contractor's testimony as to the reasonable value of services is admissible to prove the amount of the damages award). This is a case where the claimant has carried his burden to prove his claim with as much certainty as the case permits. See *Meisinger Earth Moving, Inc. v. State*, 212 Neb. 554, 324 N.W.2d 387 (1982).

In arriving at our conclusion in this case, we have not overlooked the evidence that in 1983 the decedent executed deeds naming the claimant and his brother as grantees of her farm and that she delivered the deeds to the claimant in 1984 with instructions not to record them until after her death. There appears to be no competent evidence that the work the claimant performed for his aunt from February 1984 until her death was in consideration of his and his brother's receiving the deeds. Neither is there sufficient evidence to draw that inference. It is implicit in the trial court's ruling that the work performed by the claimant had no relation with the aunt's conveyances of her farm.

It cannot be said that the trial court was clearly wrong in allowing the claim of the decedent's nephew in the sum of $9,000.

AFFIRMED.